THE PHŒNIX INSURANCE COMPANY OF BROOKLYN, NEW YORK, PLAINTIFF IN ERROR, V. THE CITY OF OMAHA, DEFENDANT IN ERROR.

1. **Taxes:** INSURANCE PREMIUMS. The gross premiums received by every insurance company, other than mutual companies without capital stock within this state, during the year previous to the year of listing in the county where the agent conducts the business, *Held*, To be assessable and taxable as personal property in the hands of such agent.

2. ———: ———: CITIES OF FIRST CLASS. The words, "personal property taxable according to the laws of this state," as the same occur in section twenty-five of chapter thirteen of the Compiled Statutes of 1885, entitled "Cities of the first class," *Held*, To be used in the sense of "taxables" or "subjects of taxation," and to embrace all subjects of taxation under the laws of the state other than real estate, which is therein specially named.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*W. S. Shoemaker*, for plaintiff in error, cited: *Lott v. Ross*, 38 Ala., 156. *Mayor v. Hartridge*, 8 Ga., 23. *Warring v. Savannah*, 60 Ga., 99. *Dubuque v. Northwestern Ins. Co.*, 29 Iowa, 9. *People v. Thurber*, 13 Ill., 554. *North America Ins. Co. v. Com.*, 87 Penn. State 173. *Glasgow v. Rowse*, 43 Mo., 479. *Ins. Co. v. Com.*, 133 Mass., 162.

*John L. Webster*, for defendant in error, cited: *State v. R. R. Co.*, 45 Md., 361. Cons., Sec. 1, Art. IX. *Paul v. Virginia*, 8 Wall., 168. *Telegraph Co. v. Lieb*, 76 Ill., 172. *Leavenworth v. Booth*, 15 Kan., 627. *People v. Davenport*, 91 N. Y., 574. *People v. Commissioners*, 76 N. Y., 73. *Worth v. R. R. Co.*, 89 N. C., 291.

Phœnix Ins. Co. v. City of Omaha.

COBB, J.

This action was brought in the district court of Douglas county by the Phenix Insurance Company of Brooklyn, New York, against the city of Omaha, for the recovery of certain taxes paid by the plaintiff to the defendant under protest.

The cause was submitted to the district court upon an agreed statement of facts, and tried to the court, without the intervention of a jury. The court found on the issues joined for the defendant, and rendered judgment in its favor.

There was no motion for a new trial, and the cause is brought to this court by petition in error; the following errors being assigned:

1. The court erred in finding for the defendant.

2. The finding is not sustained by the agreed statement of facts.

3. The court erred in giving judgment for the defendant.

4. The finding and judgment are contrary to the law.

Counsel for defendant in error makes two points against the proceedings of the plaintiff in error, not reaching the merits of the controversy:

1. That the case having been brought to this court upon a printed abstract, without filing any transcript or bill of exceptions, and in attempted conformity to a rule of this court, but in violation of such rule, in that there was not filed therewith "a transcript of the final judgment, decree, or order sought to be reversed," or "the name of the judge who tried the cause in the court below." Upon an examination of the record I find it not to be open to this objection. The petition in error is accompanied by a certified copy of a journal entry in the district court, embracing the judgment sought to be reversed and containing also

the name of the judge who rendered it.   I think the rule referred to was sufficiently complied with.

2.   The second point made by the brief of counsel for the defendant in error is, that plaintiff in error cannot obtain a review of the judgment of the court below, for the reason that there was no motion in said court for a new trial.

The cases cited by counsel only go to the extent that where the errors assigned relate to the proceedings of the trial court, a motion for a new trial is necessary, and do not relate to cases where the errors relate only to the judgment itself; neither does the reason of the rule extend to such cases, and it has been the constant practice of this court to look into alleged errors in judgments where the cause has been tried to the court without a jury, and where there has been no motion for a new trial.   But in all such cases the consideration of this court has been directed only to alleged errors in the judgment *per se*.   See *Cruts v. Wray*, 19 Neb., 582, cited by counsel for defendant in error.

We are all of the opinion that there was no necessity for a motion for a new trial in the court below for the purpose of presenting the alleged errors, as contained in the petition in error, to this court for review.

The errors assigned are all directed to the judgment, and will be considered together.

The following is the agreed statement of facts upon which the cause was submitted to the district court:

### "AGREED STATEMENT OF FACTS.

" It is stipulated and agreed by and between the parties and attorneys hereto, that this cause shall be heard by the court upon the following state of facts, that is to say:

" 1.   That the plaintiff is a private corporation, duly organized under the laws of the state of New York, for the purpose of carrying on the business of fire insurance. That it is doing a business in the state of Nebraska by virtue of a full compliance with all the laws thereof reg-

ulating the right of foreign fire insurance companies to do business in said state, and has been doing such business for several years last past, through its local agents in the city of Omaha, Douglas county.

" 2.   That the city of Omaha is a municipal corporation, acting under the general incorporation laws of the state governing cities of the first class.

" 3.   That under and by virtue of section 38 of chapter 77 of the Compiled Statutes of Nebraska, entitled " Revenues," the local agents of plaintiff at the said city of Omaha, in the year 1885, between the first day of April and the first day of June, same year, at the instance and request of the proper precinct assessor of Douglas county, returned for state and county taxation a list of the gross amount of premiums received at such local agency during the year 1884.   That the said list of gross premiums so returned was duly transcribed and extended on the tax list of said county, by the county clerk, together with the amount of state and county taxes levied thereon, which the plaintiff promptly paid.

" 4.   That the precinct assessors of Douglas county, in making the returns of the gross amount of premiums received by insurance companies having local agencies in the city of Omaha, use separate and distinct lists, which are provided by the county especially for that purpose.

" 5.   That the city clerk of the city of Omaha, in the year 1885, entered on the city assessment roll for that year for municipal taxation, the gross amount of premiums so received and returned to the county precinct assessor, and entered for taxation on the county tax list, as aforesaid.

" 6.   That taxes for municipal purposes for the year 1885 were levied by the city of Omaha on the gross amount of said premiums so entered on the city assessment roll by the city clerk, as aforesaid.

" 7.   That during the years 1884 and 1885 taxes were levied and collected within the corporate limits of the city

of Omaha on a returned and assessed valuation of about one-third of the true and real value of real and personal property.

" 8.    That plaintiff's local agents make monthly returns on the last day in each and every month, and forward all premiums received for plaintiff, less the commissions retained for effecting the insurance risks, to the general western managing agent, at Chicago, Ill., who in turn forwards to the head office of plaintiff at Brooklyn, New York, and that plaintiff's local agents made such monthly returns during the years 1884 and 1885.

" 9.    That all other home and foreign insurance companies doing business in the city of Omaha are subjected to like taxation for municipal purposes, in the same manner as plaintiff is taxed.

" 10.    That on the 29th day of December, 1885, plaintiff, paid to the city treasurer of Omaha, under protest, the taxes so levied by the city of Omaha, as aforesaid, amounting to $278.23, and on the 18th day of January, 1886, plaintiff served the proper written demand on the said city treasurer, addressed to the city of Omaha, and to Truman Buck, its city treasurer, demanding the return and re-payment of said taxes to plaintiff on the ground and for the reason that the city, under its charter and the constitution of the state, has no authority whatever to levy and collect said taxes.

" 11.    That defendant has failed and refused to refund or return to plaintiff said taxes, or any part thereof.

" 12.    That at the time of the enactment of said section 38, there were no home insurance companies then doing business in the state of Nebraska.

" 13.    That said plaintiff was not subjected to any other levy or required to pay any other tax than as hereinbefore stated.

" 14.    That said plaintiff has capital stock and is not doing business as a mutual company.

"15. That the tax so levied is uniform as to the class upon which it operates."

And at the May term, 1886, of said court, and on the 23d day of July, 1886, there was a trial to the court, on the pleadings and agreed facts, no other evidence having been introduced on the trial; and on the 8th day of January, 1887, at a regular term of the court, judgment for costs was given for the defendant, to which exceptions were duly taken at the time.

Section thirty-eight of the revenue act (chapter 77), as it stood before the amendment of 1887, provided that, "Each and every insurance company transacting business in this state shall be taxed upon the gross amount of premiums received within the state during the year previous to the year of listing in the county where the agent conducts the business, and the agent shall render the list and be personally liable for the tax; and if he refuses to render the list, or to make affidavit that the same is correct to the best of his knowledge and belief, the amount may be assessed according to the best knowledge and discretion of the assessor. Insurance companies shall be subject to no other taxation under the laws of this state, except taxes on real estate, and the fees imposed by the chapter on insurance. But the provisions of this section shall not apply to companies having no capital stock, and doing business exclusively as mutual companies."

The legislature has thus declared the premiums received by insurance companies doing business in this state, other than mutual companies without capital stock, to be subject to taxation in the hands of the agent. It is the law and policy of the state to make yearly assessment and collection of taxes. The amount of the premiums received by any insurance company, for any one year, can only be known after the expiration of such year; accordingly, for the purpose of such taxation, the law adopts the year terminating at the date of the annual assessment of property for gen-

eral taxation, and charges the agent with the duty of making a true list of such premiums for such year, and of returning it, properly verified, to the assessor ; and also of retaining in his possession, at his peril, a sufficient amount of such premiums to pay the taxes on the value of the premiums so listed and returned by him.   It is stated in the agreed statement of facts that, at the date of the enactment of the above statute, there were no home or domestic insurance companies doing business in the state.   It is therefore assumed that these provisions were made expressly to apply to foreign companies, doing business in this state, like the plaintiff in error.   It will also be assumed that a foreign company coming to this state to do business, does so in view of the public law of the state, and that all of its transactions with its agents, and others, will be made with regard to such laws.   The law makes these premiums taxable in the hands of the agent, it charges him with the payment of the taxes thereon, and takes no further account of them.   If it be true in the case at bar, that the company, plaintiff in error, had removed the money value of the premiums out of the state at the time of the assessment, that was a circumstance of which no taxing officer of the state could take cognizance, or of which, in a proceeding at law, can such company take any advantage.

I do not understand the plaintiff in error to raise a question as to the constitutionality of the revenue law (chapter 77 of the Compiled Statutes) as a whole, or of any section or provision of it.   Its contention is, that the earned premiums of insurance companies of the class to which it belongs are not among the subjects of taxation within its provisions ; and secondly, if they are classed among the subjects of taxation by state and county authority, yet, that cities have not been vested with authority to tax them for municipal purposes.   In addition to what has been said, in construing section thirty-eight of chapter 77, it may be proper to say that the whole of said chapter must be con-

strued together; and while it may be true, as contended for in the brief, that the premiums of insurance companies do not fall within the general enumeration of taxable property contained in the first section of the act, it by no means follows that the specific provisions of section thirty-eight may be rejected; but, on the contrary, if there be a conflict between the two sections, upon well-known principles of construction, the language of the one which treats only of the subject generally will yield to that of the one which treats specifically of the matter in controversy. But really there is no conflict between the two sections. Let us examine the language of the first section: "The property named in this section shall be assessed and taxed, except so much thereof as may be in this chapter exempted: *First.* All real and personal property in this state. *Second.* All moneys, credits, bonds or stocks, and other investments, the shares of stock of incorporated companies and associations, and all other personal property, including property *in transitu* to or from this state, used, held, owned, or controlled by persons residing in this state. *Third.* The shares of capital stock of banks and banking companies doing business in this state. *Fourth.* The capital stock of companies and associations incorporated under the laws of this state."

Bearing in mind that this section consists of general terms only, there is little or no difficulty in conceiving that either one of several of the terms used may, in their breadth, cover the earned premiums of insurance companies in the hands of local agents; for instance, "property *in transitu,* to or from this state, used, held, owned, or controlled by persons residing in this state;" also, "other investments" as well as "all * * personal property," are words which seem to justify the conclusion as above, that by the provisions of section thirty-eight the legislature has recognized the premiums under consideration, in the hands of local agents, as property, for the purposes of taxation.

Having thus reached the conclusion that, under the provisions of the statute, the premiums of insurance companies which have come into the hands of local agents, during the year next before the time of making the annual assessment, are assessable as property in the hands of such local agents, I come to the consideration of the second point, to-wit: Has the state vested cities of the first class (as the law applicable to such cities stood prior to the legislation of 1887) with the power and authority to tax such premiums for corporate purposes?

Section 25 of chapter 13 of the Compiled Statutes of 1885, entitled "Cities of the first class," provides that, "The mayor and council shall have power to levy and collect taxes for general purposes, not exceeding twelve mills on the dollar valuation in any one year, on all the real estate and personal property within the corporate limits of the city taxable according to the laws of this state; the valuation of such property to be taken from the assessment roll of the proper county, and it shall be the duty of the county clerk to permit the city clerk to make out from the assessment rolls of the county an assessment roll for the city of all property liable to taxation as above specified."

We have seen, while the first branch of the question was under consideration, that the thirty-eighth section of the revenue act regards premiums as property in the hands of the local agent, and prescribes the method of placing the same, and the amount or the value thereof, upon the assessment roll of the county for the purpose of taxation. The section of chapter thirteen above quoted confers upon the mayor and council of cities of the first class the power to tax, within the limits specified, for general purposes, all of the real and personal property within the corporate limits of the city taxable according to the laws of the state, and provides that the valuation of such property be taken from the assessment roll of the proper county. The two sections

of the statutes above quoted, although contained in different chapters, are *in pari materia,* and so must be construed together. Construing them together, I conceive the conclusion to be irresistible, that the power of the city authorities is ample to tax for general corporate purposes, within the prescribed limits, all property or subjects of taxation recognized as such, and provided to be placed on the assessment rolls for taxation by state and county authority.

The case of *Lott v. Ross & Co.,* 38 Ala., 156, cited and relied on by counsel for plaintiff, arose upon the construction of an act of the legislature "for the improvement of the harbor of Mobile." By its provisions it was made the duty of the "president and commissioners of revenue of the county of Mobile to cause to be assessed and collected from the county of Mobile, for a term not exceeding ten years, an annual tax, not exceeding twenty cents upon each hundred dollars of taxable property within said county," etc. The code of that state provided that, "there shall be assessed on the gross amount of sales, in or during such tax year, of merchandise, fruit, or confectionery, or any article or commodity not herein specially taxed, made by any person engaged in selling; on each hundred dollars and at the rate of twenty cents.". Lott was the tax collector of Mobile county. Ross & Co. were wholesale and retail grocers, from whom he was proceeding to collect a special tax of twenty cents on each hundred dollars of their sales during the past year, under the act above in part quoted, in addition to the tax assessed by the code. The cause came before the supreme court upon appeal from an injunction restraining such collection. The court, in the opinion, draw a distinction between "taxable property," and "subjects of taxation," within the meaning of the code of that state. The court cite section 391 of their code, as follows: "Taxes are to be assessed by the assessor in each county on and from the following *subjects* and at the the following rates:" and they say, "And the distinction

between *property* made liable to taxes and other *subjects* of taxation, is clearly drawn in various sections of the code." In addition to the tax on sales, there were given in the opinion other examples of the subjects of taxation under the said code, for illustration: the poll tax, the tax on free negroes, on lectures to which an entrance fee is charged, "on official seals," and "each suit in the supreme court." While it is not stated, it is apparent that the code itself fixed the rate or amount of taxation on each one of these *subjects* of taxation, in like manner as upon sales, and the law decided by the case is (I quote the syllabus): "A grant of power to a corporation to levy a *special* tax must be strictly construed, and any doubtful question as to the extent of the power must be decided against the corporation. 2. The 5th section of the act  *  *  *  which authorizes the assessment and collection of a special tax 'not exceeding twenty cents upon each hundred dollars of taxable property within said county,' does not authorize the imposition of a tax on the gross amount of sales of merchandise."

It is conceded that some of the reasoning of the court in that case, so far as the same can be applied to one so entirely dissimilar in its facts, is favorable to the position of the plaintiff in error, yet other portions of it are quite the reverse. I quote from the opinion. "Nor are we able to decide that the words 'taxable property' are here used in the sense of 'taxables' or 'taxable subjects,' and not according to their ordinary signification of things taxed which are the subject of ownership. Undoubtedly the word 'property' is sometimes employed in revenue laws in this larger sense of 'subjects,' and so embraces everything liable to taxation. Such will be the construction of the word wherever the context requires it, or wherever, if not so understood, the plain object of the law would be defeated." The court cite *Carter v. Mercer*, 9 Ala., 556. By reference to the latter case it will be seen that there the court held that, "the term taxable property, used in the

act," then under consideration, "includes a poll tax as well as all other taxable property," and this was a *qui tam* action for a penalty.

I have carefully examined the two cases cited from the Georgia report, and fail to see that they are applicable to the question involved in the case at bar.

In the case of *The City of Dubuque v. The Northwestern Life Insurance Company*, 29 Ia., 9, it was held that: "The annual premiums of an insurance company, received by an agent thereof residing in a city, are not subject to taxation as personal property, under the general power conferred upon the city by its charter to provide for the taxation and assessment of all taxable property within the city. 2. Such premiums are in the nature of gross income, and do not constitute property in its proper sense."

This case is clearly distinguishable from the case at bar, for in Iowa the statute provided that (I quote from the opinion): "Every insurance company is required to pay into the state treasury two per centum upon the premiums on risks received by it during the preceding year." This tax, it is declared in the provision just cited, "shall be in full for all taxes upon the corporation or its shares under the laws of this state, except taxes upon real property." The city of Dubuque was empowered by its charter "to provide for the assessment of all taxable property in said city with reference to taxation for city purposes." The statute does not provide for the assessment of such premiums, or for placing them upon the assessment roll with other property, as is provided for by the section of our statute above cited. Nor does the charter of the city of Dubuque give authority to, or adopt, the assessments of the county assessors, as our statute does, to cities like the defendant in error; nor is the agent held personally for the payment of the tax. So that it may be conceded that, under the statute of Iowa, these premiums do not fall within the general designation of taxable property. To

hold that they did would be inconsistent with the provision by which they are "required to pay into the state treasury two per centum," etc.  This two per centum is nowhere called a tax, although it is declared to be in full of all taxes, etc.  On the contrary, as we have seen, our statute provides for the taxation of the gross amount of such premiums in the county where they are received, the same as taxable property; for the placing the amount thereof upon the assessment roll along with taxable property, and that the agent who conducts the business is declared personally liable for the tax.  The charter of the city of Omaha also provided for the taxation of all real and personal property within the corporate limits of the city, taxable by the laws of the state, and that the valuation of such property be taken from the assessment roll of the proper county, etc. It must be held, as suggested by the court in the case of *Lott v. Ross & Co.*, 38 Ala., 156, that the words "taxable property," or "property taxable according to the laws of this state," are used, in the law governing cities of the first class in our statute, in the sense of "taxables," or "subjects" of taxation, and embraces everything liable to taxation.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.