(92 South. 478)

## TYLER v. STATE. (6 Div. 499.)

(Supreme Court of Alabama. Dec. 1, 1921. Rehearing Denied Jan. 19, 1922.)

**1. Statutes ⬉141(3)—Act amending certain sections of jury law held not unconstitutional.**

Acts 1919, No. 715, amending certain sections of the Jury Law of 1909, is not violative of Const. § 45, providing that no law shall be amended by reference to its title only, but so much thereof as is amended shall be re-enacted and published at length, the amendment in question being complete, intelligible, and capable of being understood without reference to the original act.

**2. Jury ⬉66(6)—Fixing venire at 90 and drawing 93 names held not error.**

That the venire was fixed at 90 names and the court drew 93 names was not error, as the number fixed as well as the number drawn were within the minimum and maximum fixed by law.

**3. Jury ⬉80—That list contained 42 names when the return showed 55 was not error.**

Where the return of jurors found present and not excused showed 55 names, the selecting of a jury from a list of only 42 names, one having been excused and 12 being engaged in the trial of another cause, was not error, as Acts 1919, No. 715, § 32, fixes the minimum for the list at 30.

**4. Homicide ⬉203(3)—Evidence held to show that declarations of deceased were made under a sense of impending death.**

In a prosecution for homicide, testimony by the doctor who attended deceased that he told deceased that there was no hope for him, and that he had but a short time to live, and asked deceased if he wanted to make a statement, that deceased replied that he would like to make a statement, and did make a statement, was sufficient predicate to show that the statement was made under a sense of impending death.

**5. Homicide ⬉180—Evidence that defendant was under the influence of liquor at time of shooting held admissible.**

In a prosecution for homicide, evidence by the arresting officer that the defendant was under the influence of liquor at the time of the arrest shortly after the shooting *held* admissible in corroboration of evidence that defendant was intoxicated at the time of the shooting.

**6. Homicide ⬉190(7)—Threats by deceased against defendant held admissible.**

In a prosecution for homicide, threats by deceased against defendant, whether communicated to defendant or not, were admissible, where evidence tending to show that deceased was the aggressor and made hostile demonstrations tending to produce the honest belief on the part of defendant that he was in a position of peril was admitted without objection.

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

7. **Homicide** ⬅187—Testimony that defendant objected to sister keeping company with deceased held inadmissible, in absence of proof of self-defense.

In a prosecution for homicide, an objection to a question, asked defendant's sister, if defendant had not objected to her keeping company with deceased, and if she had not discussed the matter with deceased, was properly sustained, where there was no evidence that deceased was the aggressor, and that defendant was acting in self-defense.

8. **Homicide** ⬅300(14)—Instruction held properly refused, as omitting the question of belief on part of defendant that he was in danger of bodily harm.

In a prosecution for homicide, an instruction that if defendant did not provoke the difficulty, but approached deceased in an orderly manner, and deceased replied angrily and insultingly, advanced towards defendant, taking hold of him with one hand and reaching for the rifle with the other in such manner as to indicate to a reasonable man that his purpose was to use the rifle, the defendant was authorized to shoot, was properly refused, because it pretermits a bona fide or honest belief on the part of defendant that he was in a position of peril.

9. **Criminal law** ⬅761(3)—Instruction that defendant was not bound to retreat held properly refused, as invading jury's province.

In a prosecution for homicide, an instruction that there was no duty on the part of the defendant to retreat from his mother's room and dwelling was properly refused, as invading the province of the jury, as it was for them to determine whether defendant was acting on the offensive or defensive.

10. **Homicide** ⬅286(3)—Instruction that defendant could not be convicted unless deliberation and premeditation were proved held properly refused.

In a prosecution for homicide, instructions defining deliberation and premeditation, and requiring these elements to be proved beyond a reasonable doubt before defendant could be convicted, *held* properly refused, as instructing an acquittal for murder in the second degree or manslaughter, as well as murder in the first degree, unless the killing was with premeditation and deliberation.

11. **Criminal law** ⬅763, 764(1)—Instruction that there was a variance between allegations in indictment and proof properly refused.

In a prosecution for homicide, an instruction that there was a variance between the allegations and proof of indictment, and for this variance defendant could not be convicted, *held* properly refused, as being manifestly bad.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Lon Tyler was convicted of murder in the first degree, and he appeals. Reversed and remanded.

See, also, 89 South. 926.

The objection to and motion to quash the indictment was based first on the insufficiency of legal testimony for the grand jury to authorize the finding in the same, but this ground was abandoned. The second reason for quashing was based first on the proposition that the grand jury was improperly impaneled, in that after passing upon all the excuses and so forth of the jurors summoned and in attendance on the court for the week the court did not cause the names of all the jurors in attendance upon the court on that day, and who were not excused by the court, to be written on separate slips of paper or cards and placed in a lot or box, and thereupon the judge of the court did not in open court draw from the lot or box at said term the names of 18 persons to be impaneled and sworn as the grand jury for said term of said court, and which was the grand jury that returned this indictment; and, second, that the act approved September 29, 1919, under which the grand jury was drawn, was void, in that it violates the Constitution of the state of Alabama.

The motion to quash the venire was based on the same grounds as to the unconstitutionality of the act as the motion to quash the indictment and on the further grounds that the court ordered 90 names to be drawn, and then proceeded to draw 93 names; and that, notwithstanding the said order and the drawing of 93 names, by excuses and otherwise the venire was reduced to 55.

Dr. Waldrop testified that on the morning of December 14, 1920, he was down at the hospital attending Mr. Alexander, the man alleged to have been killed, and that while there he told Mr. Alexander that he was going to die, that there was no hope for him, and that he had but a short time to live, and asked him if he wanted to make a statement; that Alexander replied that he would like to make a statement, and that he did make a statement, which was taken down by Mr. Perry, the deputy solicitor; and that his independent recollection of what Alexander said coincided with the statement as taken down and produced by Mr. Perry.

The following charges were refused to the defendant:

(1) The court charges the jury that if the defendant did not provoke the difficulty, but approached the deceased in an orderly manner, and the deceased replied angrily and insultingly, and advanced towards the defendant, taking hold of him with one hand and then reaching with the other hand for the rifle, in such manner as to indicate to a reasonable man that his purpose was to use the rifle, then the defendant was authorized to shoot the deceased.

(3) The court charges the jury there was no duty on the part of the defendant to retreat from his own mother's room and dwelling.

# TYLER v. STATE

**131**

(207 Ala.)

(7) Deliberation and premeditated means that the slayer intends before the blow is delivered that he will strike, and that death will be the result, and unless you find these two elements proved by the evidence in this case beyond all reasonable doubt then you cannot convict the defendant.

(10) The court charges the jury that the burden is on the state to establish to you beyond all reasonable doubt that there was deliberation and premeditation in the mind of the defendant before the deceased was shot, and unless the testimony so convinces you, then you cannot convict him for murder.

(11) The court charges the jury that there is a variance in the proof and the allegations of the indictment, and for the variance you cannot convict the defendant as charged in the indictment.

Pinkney Scott, of Bessemer, for appellant.

The court should have granted the motion to quash the venire, and not put the defendant upon a venire of only 55. 133 Ala. 170, 32 South. 851; 174 Ala. 16, 56 South. 998, Ann. Cas. 1914B, 760; 172 Ala. 418, 55 South. 601; 171 Ala. 38, 55 South. 118; 67 South. 989. Charge 3 should have been given, as should charges 7, 10, and 11. 112 Ala. 1, 21 South. 214; 71 Ala. 336; 60 Ala. 26; 1 Mayfield, 655. Counsel discuss the other assignments of error, but without citation of authority.

Harwell G. Davis, Atty. Gen., and Ben G. Perry, of Bessemer, for the State.

The act of 1919 does not violate the Constitution. 123 Ala. 84, 26 South. 516. There was no merit in the contention that 93 names were drawn, instead of 90, as affecting the validity of the venire. 55 South. 610. The court may excuse sick or disqualified jurors, and may require the defendant to strike from a venire not having on it the names of jurors who are then present, but engaged in the trial of another cause. 56 South. 610; 129 Ala. 41, 29 South. 929. The dying declaration was properly admitted. 201 Ala. 446, 78 South. 824. The court properly refused charge 3. 114 Miss. 403, 75 South. 251; 15 Ala. App. 665, 74 South. 757. On these authorities, the court also properly refused the other charges.

ANDERSON, C. J. [1] The act of 1919 (page 1039), amending certain sections of the Jury Law of 1909, does not offend so much of section 45 of the Constitution as provides that:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length."

The amendment here is complete and intelligible and original in form, and can be understood without reference to so much of the original act as is sought to be amended.

State ex rel. Terry v. Lanier, 197 Ala. 1. 72 South. 320; State v. Rogers, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; Montgomery v. Birdsong, 126 Ala. 645, 28 South. 522.

[2] The fact that the venire was fixed at 90 and the court drew 93 names was not an error of which the defendant can complain. The number fixed as well as the number drawn were within the minimum and maximum as fixed by law. Walker v. State, 204 Ala. 474, 85 South. 787; Rudolph v. State, 172 Ala. 379, 55 South. 610.

[3] It is next insisted that after the return as to the jurors found and present and not excused the number was reduced to 55, and that the list from which the jury was selected contained only 42 names. In other words, that the defendant was deprived of 13 names in the selection of his jury. It appears that the court for good cause excused one of said 13, and the other 12 were engaged in the trial of another cause. Section 32 of the act fixes the minimum number for the list at 30, and the list here contained 42 names. We do not think that the trial court had to postpone this case until the 12 jurors engaged in the trial of the other case got through, or in omitting for a good excuse the other juror. It has been heretofore held, when the jury law was stricter and the construction of same more technical than at present, that when some of the veniremen were engaged upon another case the trial court could proceed without them. Dorsey v. State, 107 Ala. 160, 18 South. 199, and cases there cited. The latter part of section 32 authorizes the trial of two or more capital cases the same day and by the same venire.

[4] We think that the testimony showed a sufficient predicate that the declarations of Alexander, the deceased, to Dr. Waldrop were made by him under a sense of impending death, when the motive for falsehood may be presumed to have been lost in the despair of life. Dr. Waldrop told him that he could not get well, but would die, and his statement showed that he believed or thought he would die. Patterson v. State, 171 Ala. 2, 54 South. 696, and cases there cited.

[5] As a part of the res gestæ and without objection, some of the state's evidence showed that at the time of the shooting, about 3:30 p. m., the defendant was under the influence of whisky, which fact was subsequently contradicted by some of the defendant's evidence. Therefore the evidence of the Deputy Kemp that defendant was under the influence of liquor when he arrested him about 5 o'clock the same afternoon was corroborative of the state's contention as to his condition at the time of the difficulty.

[6] Threats by the deceased against the defendant are admissible, whether communicated to the defendant or not, when there is evidence tending to show that the deceased was the aggressor or made hostile demon-

strations tending to produce the honest be-lief on the part of the defendant at the time of the fatal act that he was in peril of life or limb or grievous bodily harm. Wilson v. State, 140 Ala. 43, 37 South. 93. The trial court erred in not letting the defendant's witness Cooper testify to threats made to him by deceased against the defendant. The witness Dock Baggett had just testified to a conversation with the deceased as to how the difficulty started and what transpired, and from which the jury could have inferred that he, and not the defendant, was the aggressor, and that the defendant was in danger of serious bodily harm. Whether this was the proper way to prove this (Wilson v. State, supra) matters not, as it was in evidence without objection, and with this evidence in the defendant should have been permitted to show threats.

[7] At the time Mrs. Silvia was asked if defendant had not objected to her keeping company with deceased and if she had not discussed the matter with deceased, no proof had been offered tending to show that the deceased was the aggressor, and that the defendant was acting in self-defense, so as to bring the same within the rule declared in Gafford v. State, 122 Ala. 54, 25 South. 10. The trial court therefore properly sustained the objection to same. True, an objection was sustained to the question to defendant as to his objecting to his sister, Mrs. Silvia, keeping company with the deceased, and after defendant had introduced evidence tending to show self-defense, but there was no evidence showing, or offer to show, that deceased knew of his so objecting. Moreover, the question seems to have been subsequently answered by the defendant.

While we have not discussed all of the rulings upon the evidence, the same have been considered, and we fail to find that the trial court committed reversible error in respect thereto, except as above indicated.

[8] Charge 1, refused the defendant, if not otherwise faulty, pretermits a bona fide, or honest, belief on his part that he was in danger of serious bodily harm. Cheney v. State, 172 Ala. 371, 55 South. 801.

[9] Charge 3, requested by the defendant, was properly refused. It invaded the province of the jury, as it was for them to determine whether or not defendant was acting on the defensive, for if he was acting on the offensive he had no right to invoke the home of his mother, where he was a visitor, as against a duty to retreat. Walker v. State, 205 Ala. 197, 87 South. 833.

Defendant's refused charge 4 was sufficiently covered by his given charge 5.

[10] Defendant's refused charge 7, if not otherwise bad, instructs an acquittal of the defendant for murder in the second degree or manslaughter, as well as murder in the

first degree, unless the killing was with deliberation and premeditation, and which are essential only as to murder in the first degree.

Charge 10, refused the defendant, forbids a conviction of murder against the defendant in either degree, unless it is shown beyond a reasonable doubt that there was deliberation and premeditation in the mind of the defendant, elements not essential to murder in the second degree.

[11] Charge 11 was manifestly bad, and was properly refused.

Defendant got the full benefit of his refused charge B. by his given charge 14 and in the oral charge of the court.

For the error above pointed out the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

SAYRE, GARDNER, and MILLER, JJ., concur.