150 So. 164

## LEE v. STATE.

### 8 Div. 492.

Supreme Court of Alabama.

April 27, 1933.

4

BROWN, Justice.

The appellant was indicted, tried, and convicted of the offense of arson in the first degree, the offense denounced by section 3289 of the Code of 1923, as amended by the act approved September 9, 1927, entitled "An Act to amend Sections 3289, 3290, 3291, 3292, 3293 and 3294 of the Code of Alabama, relating to the crime of arson and attempt to commit arson." Gen. Acts 1927, pp. 552–554.

The appellant on his trial questioned the constitutionality of said act, and this question has been submitted to this court by the Court of Appeals.

▆▆▆ Appellant's first contention is that the act violates section 15 of the Constitution, which provides "That excessive fines shall not be imposed, nor cruel or unusual punishment inflicted."

The section as amended provides that: "Any · person who *willfully sets fire to* or burns, or causes to be burned, or who aids or procures the burning of any dwelling house, or any kitchen, shop, barn, stable, or other out house within the curtilage of such dwelling house, *the property of another;* or any person who, with *intent to defraud,* sets fire to or burns or causes to be burned, or who aids or procures the burning of any dwelling house, kitchen, shop, barn, stable or other out house within the curtilage of such dwelling house, *the property of himself,* shall be guilty of arson in the first degree, and must, upon conviction thereof, be punished by imprisonment in the penitentiary for not less than two nor more than twenty years; provided ·said arson shall not produce the death or maiming of any person, *but, if the said arson shall produce the death or maiming of any person, the punishment shall be death or imprisonment in the penitentiary for life, at the discretion of the jury.*" (Italics supplied.) Gen. Acts 1927, pp. 552–554.

The argument here is: "The entire section defines arson in the first degree and prescribes a punishment for that offense; the punishment thereby prescribed is imprisonment from two to twenty years in the penitentiary; however, should the death or maiming of any person be produced by said arson the punishment is death or life imprisonment. The whole law of arson is based on the intent to burn and the intention is not changed even though a person is thereby killed or maimed. The criminal intent is the same whether or not a person is killed; were it not so the defendant would be guilty of murder, mayhem or assault with intent to murder and not an offense of arson, and the punishment prescribed calls for an infliction of a cruel, unusual and excessive punishment, a punishment hitherto unknown to the law. * * * Certainly an infliction of life imprisonment or death on one merely

committing the offense of arson, with no intention to maim or kill, although one *is accidentally* maimed or killed when the offense was committed, constitutes cruel and unusual punishment." (Italics supplied.)

The fault in this argument is that it assumes that a mere accidental death or maiming, though not the direct proximate consequence of the criminal act, would justify the imposition of the extreme penalty. The statute, being highly penal, must be strictly construed, and so construed, the death or maiming of a human being must be the direct proximate consequence of the crime, an essential element of which, under the first division of the statute, is *a willful intentional burning,* an offense, as at common law, against the habitation or person, importing an intent to harm the occupants of such building. While under the second division of the statute *an intent to defraud,* importing an intent to injure, is malevolence in kind, if not in degree, with the willful burning of the property of another.

As was observed by the United States Supreme Court in Weems v. United States, 217 U. S. 349, 368, 375, 30 S. Ct. 544, 549, 54 L. Ed. 799, 802, 19 Ann. Cas. 705: "What constitute a cruel and unusual punishment has not been exactly decided. * * * Cooley, in his 'Constitutional Limitations,' apparently in a struggle between the effect to be given to ancient examples and the inconsequence of a dread of them in these enlightened times, is not very clear or decisive. He hesitates to advance definite views, and expresses the 'difficulty of determining precisely what is meant by cruel and unusual punishment.' It was probable, however, he says, that 'any punishment declared by statute for an offense which was punishable in the same way at common law could not be regarded as cruel or unusual, in a constitutional sense.' And he says further that 'probably any new statutory offense may be punished to the *extent* (italics ours) and in the mode permitted by the common law for offenses of a similar nature.'"

▆▆ However, "the punishment of death" or imprisonment for life is neither unusual nor cruel, within the meaning of the Constitution, where the crime for which punishment is imposed is malevolent and proximately causes the death of a human being, so long as the death inflicted is speedy, and without undue pain or torture. In re Kemmler, 136 U. S. 436, 10 S. Ct. 930, 34 L. Ed. 519; Weems v. United States, supra; Storti v. Commonwealth, 178 Mass. 549, 60 N. E. 210, 52 L. R. A. 520; 30 A. L. R. 1452, note.

▆▆ The question presented here is not within the influence of the Federal Constitution. Pervear v. Massachusetts, 5 Wall. 475, 18 L. Ed. 608; O'Neil v. State of Vermont, 144 U. S. 323, 12 S. Ct. 693, 36 L. Ed. 450; Collins v. Johnston, Warden, etc., 237 U. S.

502, 35 S. Ct. 649, 59 L. Ed. 1071; Smith v. Wayne Probate Judge, 231 Mich. 409, 204 N. W. 140, 40 A. L. R. 515.

The section of the Code as amended is prospective in its operation, and is in no sense an "ex post facto law." It neither makes "a past act a crime, nor increases the punishment for past crimes, nor alters the rules of evidence as to existing crime to the detriment of the accused," and therefore does not violate section 22 of the Constitution. Kring v. State of Missouri, 107 U. S. 221, 2 S. Ct. 443, 27 L. Ed. 506; Calder & Wife v. Bull & Wife, 3 Dall. (Pa.) 386, 390, 1 L. Ed. 648; Washington v. State, 75 Ala. 582, 51 Am. Rep. 479; Smith's Executor v. Cockrell, 66 Ala. 64.

It is permissible, under the provisions of section 45 of the Constitution of 1901, to amend sections of the Code under a title which refers to the sections to be amended by number, if they relate to a single subject and the matters brought in by the amendment are germane and cognate to the law as expressed in the original section. State ex rel. Troy v. Smith, Auditor, 187 Ala. 411, 65 So. 942; Dunning v. Holcombe, 203 Ala. 546, 84 So. 740; Board of Revenue v. Jansen, 224 Ala. 240, 139 So. 358.

Appellant's contention here is that the act, both in its title and body, embraces two subjects, in that it relates to the offense of arson and attempt to commit, as defined by sections 3289, 3290, and 3291 of the Code, and the offense of "Burning insured house, vessel, etc., or casting away or destroying boat or vessel," as defined by section 3294, Code.

This statute (section 3294) first appeared in the Code of 1852, as sections 3136 and 3137, the first denouncing the offense of "Casting away, burning, etc., a vessel with intent to injure owner or insurer," and the other offense of "Burning building, etc., to charge insurer." These two sections were combined in section 3700 of the Code of 1867, in the chapter dealing with "Offenses against property, public or private," which included burglary, arson, larceny, and fraud, and was carried forward in the Code of 1876 as section 4349, without change, in the chapter dealing with "Offenses against property, public or private," headed with the offense of "Burglary." It was brought forward in the Code of 1886 as section 3785 in the exact verbiage as it appears in section 3294 of the Code of 1923, and as it appeared in the Code of 1896 (section 4341) and Code 1907 (section 6300).

In Heard v. State, 81 Ala. 55, 56, 1 So. 640, 641, the defendant was indicted for arson under section 4347 of the Code of 1876, for burning a ginhouse, the property of A. W. Walker, and on his trial he admitted the burning, but testified that he did it at the instance of Walker, "who said the building was insured, and that the insurance company had treated him badly, and he wanted to get even." Heard was convicted of arson and on appeal this court, construing and applying section 4349 of the Code of 1876, held that if the defendant's testimony was true he was not guilty of arson as charged in the indictment, but was guilty of a violation of said section 4349, which declared "an offense, separate and distinct from arson as defined in the three sections immediately preceding, —an offense including a burning, or procuring to be burned, by the owner, not from malice, but *with intent to defraud another*."

Other states have ruled in line with Heard v. State, supra, to the effect that the basic element denounced by similar statutes to ours is the intent to defraud the insurance carrier, and that it is essentially different from the offense of arson. People v. Fong Hong, 120 Cal. 685, 53 P. 265; Mai v. People of the State of Illinois, 224 Ill. 414, 79 N. E. 633; Elgin v. People of the State of Illinois, 226 Ill. 486, 80 N. E. 1014; Commonwealth v. Asherowski, 196 Mass. 342, 83 N. E. 13; 17 A. L. R. 1179, note.

Section 3289 declares that the offense therein denounced is "arson in the first degree"; so with sections 3290 and 3293, defining "arson in the second degree" and "arson in the third degree." And section 3291 defines the offense of "attempts to commit arson." But section 3294 does not declare or designate the offense denounced by that section as arson in either degree, but designates it as "burning insured house, vessel, etc., or casting away or destroying boat or vessel"; and this court has held that the offense denounced by said section is not arson in either degree. Heard v. State, supra.

The act of September 9, 1927, therefore, deals with two subjects, both in its title and body, and violates section 45 of the Constitution. Builders' & Painters' Supply Co. v. Lucas & Co., 119 Ala. 202, 24 So. 416; Ballentyne v. Wickersham, 75 Ala. 533.

All the Justices concur in so much of the opinion as deals with the validity of the act in respect to sections 15 and 22 of the Constitution, but the majority, consisting of ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., hold that the act does not deal with two subjects in its body and title, and, therefore, is not violative of section 45 of the Constitution.

KNIGHT, J., concurs in the opinion.