173 So. 25

NACHMAN et al. v. STATE TAX COMMISSION et al.

3 Div. 199.

Supreme Court of Alabama.

Feb. 18, 1937.

Rehearing Denied March 18, 1937.

Rushton, Crenshaw & Rushton, of Montgomery, for appellants.

A. A. Carmichael, Atty. Gen., Charles L. Rowe, Asst. Atty. Gen., and Hill, Hill, Whiting & Rives, of Montgomery, for appellees.

KNIGHT, Justice.

This case comes to this court on appeal by the complainants in the court below from a decree of the circuit court of Montgomery county sustaining the constitutionality of an act of the Legislature of Alabama, passed during its present special session, convened by the Governor, under the provisions of section 122 of the Constitution, on November 23, 1936.

The title of the act in question is: "An Act to amend an Act entitled 'An Act to provide for the general revenue of the State of Alabama, approved July 10, 1935,' by adding schedule 155.4A and schedule 155.4B to section 348 of said Act."

The act now before the court consists of eight sections. However, section 7 only fixes the time during which the act shall be in effect, while section 8 provides for the repeal of all laws in conflict with the act.

Section 1 of the act provides that: "Every person, firm, corporation, association or copartnership opening, establishing, operating or maintaining one or more retail stores or retail mercantile establishments within the State, whether under one general management or not, shall, in addition to all other licenses or taxes of whatever kind now levied by law, pay to the State of Alabama, as a license or privilege tax for the privilege of doing such business, an amount equal to one and one-half per cent. (1-1/2 o/o) on the gross sales of said business." This section constitutes schedule 155.4A.

Section 2 of the act makes provision for the monthly payment of the license tax levied under section 1, and for the ascertainment of the amount of the tax to be paid, and other matters relating to the ascertainment and payment of said license tax.

Section 3 of the act imposes a license tax similar in amount, and "payable to the State of Alabama, on every person, firm, corporation, association, or copartnership engaged or continuing within this State in the business of conducting places

of amusement or entertainment, billiard and pool rooms, bowling alleys, theaters, opera houses, moving picture shows, vaudevilles, amusement parks, athletic contests, including wrestling and prize fights, boxing exhibitions, football and baseball games, skating rinks, race tracks, or any other place at which amusement or entertainment is offered the public," etc.

Section 4, like section 2, provides for the ascertainment and payment monthly of the license tax levied under the provisions of section 3 of the act.

By section 5 of the act it is provided that the license levied by schedules 155.4A and 155.4B shall not apply to the sale of gasoline and lubricating oils, cigars, cigarettes, and tobacco products otherwise taxed. This section also exempts certain other persons, firms, corporations, associations, or copartnerships engaged in certain businesses otherwise taxed.

Section 6 of the act appears in the report of the case, and will not here be set out either in whole or in substance.

The complainants in their bill attack the validity of the act in question upon a number of constitutional grounds, but it would appear from briefs before us that the major contention is that the act is offensive to section 45 of the Constitution, though insistence is also made that the act is violative of sections 1, 6, 22, 23, 35, and 71 of the Constitution, as well as the "equal privilege provisions of both the State and Federal Constitutions." It is also insisted that the act is violative of that clause of the Fourteenth Amendment to the Constitution of the United States which provides: "Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The bill, as originally filed, prayed for an injunction restraining and enjoining the respondents from collecting or attempting to collect the license tax imposed by said act against retail merchants.

The complainants, as partners, operate a single retail store in the city of Montgomery, and, if the act in question is valid, are liable to the license tax provided by the act. They have filed this bill in behalf of themselves, and all other persons, firms, and corporations similarly situated who might wish to intervene. Thereafter, W. P. Pickard was allowed to intervene as a complainant in said cause.

The complainants duly amended their bill, and by their amendment they charged that the respondents contend that the act in question was and is constitutional, valid, and enforceable; that there is subsisting an actual controversy on which substantial property rights are dependent in that said act of the Legislature, if valid, requires of the complainants and other persons, firms, and corporations similarly situated the expense of keeping records of their monthly sales, the making of elaborate reports thereof to the State Tax Commission, and the payment of an onerous and burdensome tax. And while the good faith of the respondents' contentions is not questioned, complainants contend that they are ill-advised. Nevertheless, the complainants charge that respondents, public officials as aforesaid, viz., the State Taxing Department and the Attorney General's Department, threaten to strictly enforce said statute and all penalties provided by law for any failure on the part of the complainants to comply strictly therewith. Then follows prayer for declaratory judgment as to whether said act is constitutional and valid, etc.

The respondents filed demurrers to the bill, and also an answer, and a cross-bill. By their cross-bill cross-complainants pray also for a declaratory judgment as to the constitutionality and validity of the act in question.

It will thus be seen that the questions involved in this proceeding directly and vitally affect the revenues of the State, and a speedy and final determination of the same is of utmost importance, not only to the complainants, and others similarly affected by the legislation, but to the State, whose revenues are in part tied up by the litigation.

■ This court has tenaciously held to the rule that taxpayers cannot resort to a court of equity "to enjoin the collection of a tax claimed to be illegal, unless with the illegality of the tax there is connected some recognized ground of equitable jurisdiction. City Council of Montgomery v. Sayre et al., 65 Ala. 564; City of Ensley v. McWilliams, 145 Ala. 159, 41 So. 296, 117 Am.St.Rep. 26; Adams, Tax Collector, et al. v. Southern Railway Co., 176 Ala. 320, 58 So. 397; Mayor, etc., of Mobile v. Baldwin, 57 Ala. 61, 29 Am.Rep.

712. And this court in our recent cases of City of Gadsden et al. v. American National Bank, 225 Ala. 490, 144 So. 93, and Ward, Tax Collector, v. First National Bank of Hartford, 225 Ala. 10, 142 So. 93, reaffirmed the above stated rule.

◼ Of course, if the taxpayer should pay the tax under protest, but has no adequate and complete remedy at law to recover the money paid, if its payment was illegally exacted, this would justify the interposition of a court of equity to restrain the collection until there could be a judicial determination of the legality of the tax. There may be, and doubtless are, other cases in which it would be permissible for the taxpayer to resort to a court of equity for relief by injunction. Shanks et al. v. Winkler, 210 Ala. 101, 97 So. 142, 143.

Ordinarily, however, a taxpayer will not be allowed to tie up the revenues of the State—its very life blood, and without which it cannot function—unless, in addition to the illegality of the tax, there is connected with it some ground for equitable interposition. Under our theory of government there is no such thing as government by injunction.

◼ We are not forced to determine the equity of the complainants' bill as first filed, for since its filing, and before the decree was rendered thereon, the complainants amended the bill by averring sufficient facts to invoke the jurisdiction of the court under our Uniform Declaratory Judgments Act of 1935. (Gen. Acts 1935, p. 777). Under the provisions of this act, the complainants state a case entitling them to a declaratory judgment of the court upon the constitutionality of the act now attacked.

The lower court assumed jurisdiction of the cause, but reached the conclusion that the act was not violative of any of the designated provisions of the Constitution, State or Federal, and decreed accordingly. This decree we are now called upon to review.

◼ It is first insisted, and earnestly so, by appellants that the act in one or more particulars offends section 45 of the Constitution of the State.

The act purports to amend the General Revenue Law of the State, approved July 10, 1935, by adding two additional schedules—sources of income—to section 348 of said revenue law. Section 348,

covering more than a hundred pages of the printed act, contains many separately numbered schedules of license tax, covering and including many different subjects of taxation and license.

It was manifestly the purpose of the Legislature, by the adoption of the act in question, to extend the provisions of the General Revenue Law (Gen. Acts 1935, pp. 256, 441 et seq.), and particularly section 348, to include a gross receipts tax, as a privilege or license tax, on persons, firms, corporations, associations, and partnerships engaged in or operating certain designated businesses in the State of Alabama, "in addition to all other licenses or taxes of whatever kind now levied by law."

That the matters brought in by the amendatory act were germane and cognate to the matters included in section 348 no one can doubt.

It would have been quite sufficient had the title of the act in question simply read: "An Act to amend an Act entitled 'An Act to provide for the general revenue of the State of Alabama, approved July 10, 1935," without mentioning any particular section or provision of the act intended to be amended. However, even if it be conceded that the title of the amendatory act gave notice only of an intention to confine the operation of the amendment to section 348, and of a legislative purpose to deal only with subjects germane and cognate to that section, the result would be the same, for the provisions of the amendatory act, as above pointed out, are germane and cognate to the subject dealt with in section 348 of the original statute. This being true, the amendatory act is not offensive, in this respect, to the provisions of section 45 of the Constitution. Dunning v. Holcombe, 203 Ala. 546, 84 So. 740; Lee v. State, 227 Ala. 2, 150 So. 164; McCoy v. Jefferson County, 232 Ala. 651, 169 So. 304; Tyler v. State, 207 Ala. 129, 92 So. 478; Mayor, etc., of Ensley v. Cohn, 149 Ala. 316, 42 So. 827; Ex parte Cowert, 92 Ala. 94, 99, 9 So. 225.

◼ The appellants insist that the title of the amendatory act gave notice, not of an amendment of the General Revenue Law, generally, nor of an amendment of section 348 of that law, but in fact gave notice of an amendment to schedule 155 of said section 348, but such is not the case. There is not the slightest intimation or suggestion, by any words employ-

ed in the title of the act, that it was the purpose of the Legislature to deal with schedule 155 of said section 348. Appellants have wholly failed to properly interpret the title of the act, and, in failing to properly interpret the meaning of the title, have given to it a construction that the language employed will not sustain or justify. Much of the argument here made against the constitutionality of the amendatory act is predicated upon the totally erroneous assumption that the title of the act gave notice that it was the legislative purpose to deal only with matters germane and cognate to the provisions of schedule 155. The title of the amendatory act, in language plain and unequivocal, gave notice of an amendment to the General Revenue Act, by adding to section 348 additional schedules 155.4A and 155.4B, and each of said proposed additional schedules dealt with matters cognate and germane to said section 348, as above pointed out.

The amendatory act discloses its purpose to create new sources of revenue, and being complete and intelligible within itself, and capable of being understood without reference to the original section sought to be amended, there was no occasion or necessity to re-enact or publish at length the section as amended. Ex parte Pollard, 40 Ala. 77; City Council of Montgomery v. Birdsong, 126 Ala. 632, 28 So. 522; Tyler v. State, 207 Ala. 129, 92 So. 478; State ex rel. Terry v. Lanier, 197 Ala. 1, 72 So. 320; State v. Rogers, 107 Ala. 444, 19 So. 909, 32 L.R.A. 520. There is, therefore, no merit in this contention of appellants.

It is also insisted that the amendatory act contains more than one subject, and therefore in violation of that provision of section 45 of the Constitution, which provides: "Each law shall contain but one subject, which shall be clearly expressed in its title."

The particular insistence is (to quote the language of appellants' brief), that the act levies "an excise on gross receipts disguised as a license or privilege tax on retail store-keepers and all places of amusement * * * and it also appropriates the proceeds of the tax of two different classes of beneficiaries, first, to the relief of the owners of homesteads to the extent of $2,000.00 of property; and, second, to the Educational Trust Fund." In effect, that it is both a revenue

measure, and an appropriation for a special purpose or purposes.

And it is also, in this connection, argued that the act, in these respects, violates the provisions of section 71 of the Constitution which provide: "All other appropriations shall be made by separate bills, each embracing but one subject."

It is urged that the framers of the Constitution with great care separated the two subjects, "even in the exception as to *general* revenue bills and general appropriation bills in section 45." It is also insisted "logrolling" could not be prohibited if the two subjects can be combined into one; that one is a burden, while the other is a benefit.

In reply to this insistence it is sufficient to point out that the act does not undertake to make any appropriation within the meaning of section 71 of the Constitution. It is undoubtedly within the competence of the Legislature in levying a tax to provide, in the same bill, into what fund of the State the tax money when collected shall be paid, whether into the general fund, or into any special fund. It is but earmarking (Webster's New International Dictionary, p. 808; 19 Corpus Juris, p. 852, note 68; 14 Cyc. p. 1131, note 72; 3 Words and Phrases, Third Series, p. 113; 17 Am.Digest [Cent.Ed.] page 1704; Bouv. Law Dict. [Rawle's Third Rev.] p. 964) the fund, thereafter to be expended, on due appropriation, for the purposes for which the tax was levied and collected. To provide that certain funds derived from particular sources shall be paid and used for designated purposes of government is in no sense an appropriation as contemplated by section 71 of the Constitution. We do not think there is any merit in either of these two insistences of the appellants. It is our opinion that the bill deals with but one subject.

This court in the very recent case of Harris v. State ex rel. Williams, 228 Ala. 100, 151 So. 858, 861, committed itself to the following rule with respect to the passage of revenue laws for the State, and amendments thereto: "We are willing to adopt the definite position that further provision for or an amendment of the state's revenue in its various aspects, whether to provide for it or to regulate matters pertaining to it, or to amend it generally, is one subject and may be so expressed in the title of an act."

It is also insisted that the amendatory act violates section 217 of the Constitution: "The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; provided, this section shall not apply to institutions devoted exclusively to religious, educational, or charitable purposes."

The particular insistence made by appellants against the constitutionality of the act relates to that feature which directs that the comptroller, with the approval of the Governor, shall draw his warrant payable out of the Alabama Educational Trust Fund, as therein provided, in such sum as shall be found necessary for the replacement in the general fund of the 3-mill constitutional school levy, the one-mill soldiers' relief levy, and the 2½-mill levy for general purposes lost by the exemption of homesteads in the amount of $2,000.

It will be noted that the funds to be derived from the privilege or license tax provided for in the amendatory act are required to be "covered into the State Treasury and become a part of the Alabama Special Educational Trust Fund." Then follows the provision last above noted, which appellants contend under the act is unconstitutional.

We fail to see any merit in this contention. Should the homesteads of residents of this state, to the extent of $2,000 in value, be legally exempted from taxation, and the State should lose the revenue now flowing into the State Treasury from the taxation of such homesteads, we can see no valid objection, from a constitutional standpoint, to this provision of the act.

This court more than seventy years ago committed itself to the proposition that a tax upon "the gross amount of sales of merchandise" was not a tax upon the goods themselves, or fruits of sale, but upon the business or act of selling; that it was not a *property* or *income tax,* but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed. Lott v. Ross & Co., 38 Ala. 156. This holding has been reaffirmed by this court in numerous decisions since it was first announced in the above-cited case. Western Union Tel. Co. v. State Board, 80 Ala. 273, 60 Am.Rep. 99; Goldsmith v. Mayor and Aldermen of Huntsville, 120

Ala. 182, 24 So. 509; Capital City Water Co. v. Board of Revenue, 117 Ala. 303, 23 So. 970.

This court is also committed to the proposition that section 217 of the Constitution relates only to direct taxes on property, and does not apply to taxation of privileges or occupations, and constitutes no limitation upon the power of the Legislature to impose a tax on occupations or privileges.

The only limitation imposed upon the Legislature is that when it proceeds to impose a tax on occupations or privileges, it must be equal and uniform. The equality and uniformity consist in the imposition of the like tax upon all who engage in the vocation, or who may exercise the privilege taxed. Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St.Rep. 143; Desty on Taxation, § 36; Cooley on Taxation (2d Ed.) 378; Delaware Railroad Tax (Minot v. Philadelphia W. & B. R. R. Co. et al.), 18 Wall. 206, 21 L.Ed. 888.

No one would doubt for a moment that the Legislature may tax land, and exempt personal property; or it may tax personal property and not land. And this court in the case of Phoenix Carpet Co. v. State, supra, gave its approval to the following principle announced by Judge Cooley: What is true of property is true of privileges and occupations also; the state may tax all, or it may select for taxation certain classes and leave the other untaxed. Considerations of general policy determine what the selection shall be in such cases, and there is no restriction upon the power of choice, unless one is imposed by the Constitution. Cooley on Taxation, 570.

It is obvious, therefore, that the Legislature possessed the power to select the privileges and occupations upon which it imposed the license or privilege tax, there being no constitutional barrier to the exercise of this discretion. Authorities supra. The Legislature having selected the occupations and privileges it would tax, uniformity and equality in the tax imposed are preserved, and, this being true, the act in this respect violates no provision of the Constitution. American Bakeries Co. v. City of Huntsville, 232 Ala. 612, 168 So. 880.

Nor do we find in the amendatory act any provision which would have the effect of denying to the complainants

"due process," or equal protection of the law.

It is our conclusion that the amendatory act, here under attack, is free of the constitutional objections urged in brief of appellants, and it follows that the decree of the circuit court is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., concur.

BROWN, Justice (dissenting).

The question presented by this appeal is the constitutionality of the act entitled "An Act To amend an Act entitled 'An Act To provide for the general revenue of the State of Alabama, approved July 10, 1935,' *by adding* Schedule 155.4A and Schedule 155.4B to Section 348 of said Act." (Italics supplied.)

The amendment consists of *tacking onto* said section 348 two schedules levying a tax of 1½ per cent. on gross sales of the businesses of persons therein specifically designated.

Neither the act "providing for the general revenue of the State of Alabama," nor the provisions of said section 348 'of said act, are "re-enacted and published at length."

One insistence here is that the act violates that part of section 45 of the Constitution which provides that "no law shall be revived, *amended, or the provisions. thereof extended or conferred, by reference to its title only;* but so much thereof as is revived, *amended, extended,* or conferred, *shall be re-enacted and published at length.*" (Italics supplied.)

The conclusion is unescapable that the title to the bill indicated that the act was purely *amendatory.* It did not indicate that the act was to be original in form and purpose nor could it be determined from the act what the subject of the enactment was to be. It could be inferred only from its reference to the general revenue bill that it related in some way to revenue, but whether its purpose was to impose an additional tax, to grant an exemption, or apply revenues already provided for to a specific purpose, was in no way indicated. When thus analyzed, it seems to be clear that the subject of the act was not clearly expressed.

The following pertinent statement of the annotator under section 45 of the Constitution of 1901 is here reproduced: "In the early history of legislative enactments in the United States the titles of acts were considered no part of them. They were usually affixed by the clerk of the house in which the bill was introduced or first passed. They were merely intended to indicate the clerk's' understanding of the purpose or object of the bill, and not the opinion of the house. This condition led often to a chaotic mass of legislation called hodge-podge or log-rolling legislation, to prevent which most of the state Constitutions now contain provisions designed to prevent such legislation, as well as to prevent surprise or fraud upon the legislature, by means of provisions in bills of which the title gives no intimation, and for that reason might be carelessly or unintentionally enacted, and in order that the people might know the character and purpose for which measures were introduced, that they might have the opportunity of being heard by petition or otherwise.—Cooley Const.Lim. 170–173."

One of the major purposes of the quoted provisions of section 45 of the Constitution was to prevent *tacking,* hodge-podge legislation, the very course pursued in the enactment of the act in question.

In order for the legislators or the people to ascertain what the effect of the proposed act was, and whether or not it was germane and cognate to section 348 of the original law, said original law must be looked up and examined. The constitutional provision quoted was intended to avoid such necessity by requiring the act as amended, or, at least, the section amended, to be set out in full—*to prevent tacking legislation.*

In the cases cited in the majority, to wit, Ex parte Pollard, 40 Ala. 77, City Council of Montgomery v. Birdsong, 126 Ala. 632, 28 So. 522, and State ex rel. Terry v. Lanier, 197 Ala. 1, 72 So. 320, the acts dealt with were original in form under a general title, and were not amendatory.

The acts involved in Harris v. State ex rel. Williams et al., 228 Ala. 100, 151 So. 858, and Tyler v. State, 207 Ala. 129, 92 So. 478, were amendatory, and by reference to the acts it appears that the sections of the acts amended were re-enacted and published at length as required by the Constitution.

The act dealt with in Southern Railway Co. v. Mitchell, 139 Ala. 629, 37 So. 85, was original in form, not an amendatory act.

The only answer to the appellants' contention in this case is that section 45 of the Constitution is not applicable to acts for raising revenue or revenue bills, and the majority refuse to so hold.

It is pertinent here to note that while said section of the Constitution excepts "general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes" from the second clause of the section, it does not except such laws from the last clause which I have quoted at the head of this opinion. And not having done so, it is clear that it was intended to apply.

I regret to have to dissent from the views of my Brothers, but to yield on questions of such importance would be to surrender my intellectual integrity [that is, such as I possess], and this I cannot persuade myself to do. The decision of the majority, in my opinion, is just another step in emasculating the provisions of section 45 of the Constitution.

In my judgment the act violates the Constitution and is null and void.

I therefore respectfully dissent.