## LOTT *vs.* ROSS⸱ & CO.

[BILL IN EQUITY TO ENJOIN COLLECTION OF SPECIAL TAX.]

1. *Statutory power of corporation to levy special tax.*—A grant of power to⸱ a corporation to levy a special tax must be strictly construed, and any⸱ doubtful question as to the extent of the power must be decided against the corporation.
2. *Construction of statute authorizing special tax for improvement of bay⸱ and harbor of Mobile.*—The 5th section of the act approved February 21, 1860, entitled "An act for the improvement of the bay and harbor of Mobile," (Session Acts 1859, p. 538,) which authorizes the assessment and collection of a special tax, "not exceeding twenty cents upon each hundred dollars of taxable property within said county," does not authorize the imposition of a tax on the gross amount of sales of merchandise.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. N. W. COCKE.

The bill in this case was filed by W. H. Ross & Co., against Elisha B. Lott, who was the tax-collector of Mobile county, for the purpose of enjoining the collection by the defendant of a special tax, which was levied under the act approved February 21st, 1860, entitled "An act for the improvement of the bay and harbor of Mobile." The complainants were wholesale and retail grocers in the city

of Mobile, and the tax which the defendant was seeking to collect was twenty per cent. on the gross amount of sales of merchandise made by them during the tax year. The cause was submitted to the chancellor on an agreed statement of facts, on which he rendered a decree, perpetually enjoining the collection of the tax complained of.; and his decree is now assigned as error.

A. R. MANNING, and ALEX. McKINSTRY, for appellant.
J. L. SMITH, contra.

R. W. WALKER, J.—By the 4th section of the act " for the improvement of the bay and harbor of Mobile," and in order to aid the board of harbor commissioners in the performance of its powers and duties under that act, the president and commissioners of revenue for the county of Mobile were authorized to issue county bonds, to an amount not exceeding $800,000.; and by the 5th section it was provided, " that for the purpose of giving credit to said bonds, and providing the means of paying the interest upon them, and meeting the principal thereof, said president and commissioners of revenue shall cause to be assessed and collected from the county of Mobile, for a term not exceeding ten years, an annual tax not exceeding twenty cents upon each hundred dollars of taxable property within said county, with the assessing of which the tax-assessor, who now is or may be for said county of Mobile, shall be charged, under such obligations, liabilities, and duties, as are now, or may hereafter by law be imposed, for assessing the ordinary taxes for said county; and said tax shall be collected by the officer that now is, or by law may be, charged with the collection of taxes for said county of Mobile; * * * * * * and said tax-collector shall be liable for and in respect to the same, or for neglecting to collect the same, in the same manner, and to the same extent, that he now is, or by law may be, for and on account of the ordinary taxes for said county."—Acts '59–60, p. 538.

The only question for us to decide is, whether the au-

thority to assess and collect a tax, " *not exceeding twenty cents upon each hundred dollars of taxable property within said county,*" conferred the power to levy a tax of twenty cents upon each hundred dollars of the gross amount of sales of merchandise made by the appellees during the tax year. In ascertaining what is taxable property under this act, it is undoubtably proper to look to the general tax laws of the State. Whatever 'property within the county of Mobile' is subject to taxation under those laws, is liable to be taxed under this act; and the converse of the proposition is also true.—*City of Buffalo v. Leconteulx*, 15 New York, 451; *City of Richmond v. Daniel*, 14 Gratt. 385; 10 Wend. 186. But it by no means follows, that every *subject* of taxation, under the State laws, can be considered as embraced by the terms "taxable property" employed in this act. Under the Code, there are many *subjects* of taxation, which are not property, nor taxed as property. The poll-tax, the tax on free negroes, and the large class of license taxes, are illustrations of this. Section 391 of the Code begins with the provision, that "taxes are to be assessed by the assessor in each county, on and from the following *subjects*, and at the following rates;" and the distinction between *property* made liable to taxes, and other *subjects* of taxation, is clearly drawn in various sections of the Code, (see § 371, sub-divisions 1, 2, 3, 17, 18, 31; §§ 397, 403, 423, subdivision 2; §§ 429, 432, 443–4,) and in the subsequent legislation of the State.—See Acts 1853–4, pp. 3–4, §§ 2, 5.

The Code provides, that " there shall be assessed on the gross amount of sales, in or during such tax year, of merchandise, fruit, or confectionary, or any article or commodity not herein specially taxed, made by any person engaged in the business of selling ; on each hundred dollars, and at that rate, twenty cents."—Code, § 391, subdivision 22. But, as we have seen, the mere fact that by the general law a tax is levied upon sales of merchandise, does not show that they are taxed as property. By the same law, taxes are to be collected " on each lecture to which en-

Lott v. Ross & Co.

trance fees are charged," on "official seals," on "each suit in the supreme court," &c. (Code, §§ 395–6, 403, 407–8); and it will not be pretended that any of these are taxes on property.

The appellant must show, therefore, either that this tax upon sales of merchandise is a tax upon *property*, or that the word '*property*,' as employed in the act under consideration, is not to be understood in its usual sense, as designating what one is the owner or possessor of, but should be construed as synonymous with the more comprehensive word *subjects*. That the first of these propositions cannot be maintained, we consider too plain for argument. A tax upon " the gross amount of sales of merchandise", under section 391 of the Code, is not a tax upon the goods themselves, or the fruits of the sale, but upon the business or act of selling. This is not, then, a property or income tax, but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed.— See *Mosely v. Tift*, 4 Florida, 402; *State v. Stephens*, 4 Texas, 137; *State v. Bock*, 9 Texas, 369; *De Witt v. Hays*, 2 Cal. 468; Code, § 392; Acts '53–4, p. 4, § 5; Acts '59–60, p. 12; *Nathan v. Louisiana*, 8 How. (U. S.) 80–1.

Nor are we able to decide that the words " taxable property" are here used in the sense of "taxables", or "taxable subjects," and not according to their ordinary signification, of things taxed which are the subject of ownership. Undoubtedly, the word 'property' is sometimes employed in revenue laws in this larger sense of "subjects," and so embraces everything liable to taxation. Such will be the construction of the word wherever the context requires it, or wherever, if not so understood, the plain object of the law would be defeated. It was upon this principle that the case of *Carter v. Mercer* (9 Ala. 556) was decided; and upon the same principle, the word "property," as found in some of the sections of the Code relating to taxes, might be construed to embrace subjects of taxation, which are not property in the legal sense of that word.—See §§ 424, 426–7, 453.

But, as we have seen, the Code does, in numerous instances, draw a clear distinction between "property" taxed, and other subjects or items of taxation. And where the words 'taxable property' occur in an independent act, it would seem that they should be understood in the sense of things taxed which are susceptible of ownership or possession, unless there is something in the context which affixes to them a different meaning, or unless the plain object of the law will be defeated if they are not held to cover subjects of taxation which are not property in the ordinary sense.

In the present case, we are unable to discover anything in the context, which requires us to wrest the words from their ordinary meaning; and certainly we cannot affirm, that the plain object of this law will be defeated if we do not interpret them in the larger sense contended for. The context shows, that the words cannot be construed to embrace all taxable subjects. The tax is to be assessed "upon each hundred dollars" of the things taxed; and as there is a large class of taxable subjects not susceptible of valuation, and of which a pecuniary amount is not predicable, such as the poll, licenses, professions, seals, suits, &c., it it is obvious that we cannot understand the words as embracing everything subject to taxation under the general law.

On the other hand, the entire context is consistent with the idea, that '*property*' in its ordinary sense was all that was meant; and on that construction of the words, an ample field is allowed for the operation of the law, and none of the objects the legislature had in view, so far as they are disclosed by the terms of the act, are defeated. See *Mosely v. Tift*, 4 Florida, 402; *Johnson v. City of Lexington*, 14 B. Monroe, 648; *City of Richmond v. Daniel*, 14 Gratt. 385.

But, if there were a doubt upon the subject, it would be removed, when we remember that this is a grant of power, of a special and unusual character, to a subordinate body. No legal principle is more familiar, or more firmly

established, than that grants of power to a corporation, or other subordinate body, are to be construed strictly against such corporation or body. Without pausing to inquire whether there may not be exceptions to the general principle just stated, we are satisfied that, if there are any such, a grant of the power of taxation to county commissioners, in aid of an improvement outside of the county limits, is not one of them. The general rule of construction, governing grants to corporations, applies in all its vigor to such a case. According to that rule, the power claimed must be granted in plain words, or by necessary implication; or, as it is expressed by Chief-justice Black, "in the construction of every charter, to be in doubt is to be resolved, and every resolution which springs from doubt is against the corporation."—*Penn. R. R. Co. v. Canal Comm'rs*, 21 Penn. 9; *City of Richmond v. Daniel*, 14 Gratt. 386–9; *Grand Lodge v. Waddell*, June term, 1860; Sedgwick on Statutes, 466; *City Council v. Plankroad Co.*, 31 Ala. 83; *Nichol v. Mayor of Nashville*, 9 Humph. 262; *Kyle v. Malin*, 8 Ind. 34. If, therefore, there be a doubt about the extent of the power granted in this case, we must give the benefit of that doubt to the citizen whose property is sought to be subjected; and, lest the power may have a larger scope than was intended by the legislature, we must limit it within bounds which are so plainly embraced by the words of the grant as to be free from doubt.

On the whole, our conclusion is, that the tax was not authorized by the act under which it appears to have been levied.

Decree affirmed.