863 So.2d 73 (2003)
Joe BROWN et al.
v.
BOARD OF EDUCATION OF MONTGOMERY COUNTY et al.
Elmore County
v.
Board of Education of Montgomery County et al.
Susan V. Helms et al.
v.
Board of Education of Montgomery County et al.
B. Elebash Agricola and Matthew Givens
v.
Board of Education of Montgomery County et al.
Floyd Minor et al.
v.
Board of Education of Montgomery County et al.
Ellen Brooks, District Attorney
v.
Board of Education of Montgomery County et al.
1020755, 1020758, 1020763, 1020764, 1020768, and 1020773.
Supreme Court of Alabama.
May 2, 2003.
*74 John E. Enslen of Enslen, Pinkston & Courtney, LLP, Wetumpka, for appellants Joe Brown, Rose Marie Brown, Christopher Brown, and other individual taxpayers in case no. 1020755.
George L. Beck, Jr., Gregory M. Biggs, and Terrie S. Biggs of George L. Beck, Jr., P.C., Montgomery, for appellant Elmore County in case no. 1020758.
James M. Sizemore, Jr., Montgomery, for appellants Susan V. Helms et al. in case no. 1020763.
Jeffery C. Duffey, Montgomery, for appellants B. Elebash Agricola and Matthew Givens in case no. 1020764.
J. Doyle Fuller, Montgomery, and L. Cooper Rutland, Jr., of Rutland & Braswell, Union Springs, for appellants Glenn Franklin Bayles, Floyd Minor, and Rawl T. Barksdale in case no. 1020768.
Eleanor I. Brooks, district atty., and Tracy L. Roberts, deputy district atty., Montgomery, in case no. 1020773.
James R. Seale of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery; Terry G. Davis of Davis & Hatcher, L.L.C., Montgomery; and James N. Walter, Jr., and John F. Andrews of Capell & Howard, P.C., Montgomery, for appellees the Board of Education of Montgomery County and its members.
Thomas T. Gallion III of Haskell Slaughter Young & Gallion, LLC, Montgomery; and Tyrone C. Means of Thomas, Means, Gillis & Seay, P.C., Montgomery, for appellee Montgomery County Commission.
Charles B. Paterson of Balch & Bingham, LLP, Montgomery, for amici curiae Montgomery Area Chamber of Commerce and Montgomery Interdemoninational Ministerial Alliance; Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for amicus curiae Montgomery Education Foundation; David R. Boyd and Dorman Walker of Balch & Bingham, LLP, Montgomery, for amicus curiae Alabama Association of School Boards; and Tabor R. Novak, Jr., of Ball, Ball, Matthews & Novak, P.A., Montgomery, for amicus curiae A+ Education Foundation, in support of the appellants.
PER CURIAM.
On January 31, 2003, the Montgomery Circuit Court entered a judgment confirming the validity and legality of (1) $100 million in revenue warrants ("the warrants") issued by the Board of Education of Montgomery County ("the Board")[1] and (2) an ordinance ("the ordinance") enacted by the Montgomery County Commission ("the Commission") imposing a "Privilege License Tax Upon the Privilege of Engaging in Trades, Occupations and Professions in Montgomery County" ("the occupational tax").
The Montgomery County district attorney (on behalf of the taxpayers and citizens of Montgomery County), intervenor taxpayers (the district attorney and the intervenor taxpayers are hereinafter referred to collectively as "the taxpayers"), and Elmore County filed six notices of *75 appeal. Upon motion of the parties, the six appeals were consolidated. We reverse and remand.

I. Facts
On August 19, 2002, the Board passed a resolution authorizing the sale and issuance of the warrants, and the Commission, by a vote of 3 to 2, enacted the ordinance, imposing a 1.5% tax on "Employee Compensation" and "Owner Compensation" (as those terms are defined in the ordinance) received by individuals who work in Montgomery County. Also on August 19, 2002, the Board filed this action seeking to have the warrants and the occupational tax validated in accordance with Ala.Code 1975, §§ 11-81-220 through XX-XX-XXX (included in Article 7 of Chapter 81, entitled "Validation of Bonds Prior to Issuance"). The proceeds of the occupational tax were pledged to the Board "for public school purposes, including, without limitation, the payment of the principal of, premium, if any, and interest on the Warrants."
In accordance with § 11-81-222(b), the trial court issued an order requiring taxpayers and citizens of Montgomery County to show cause by September 13, 2002, as to why the warrants should not be validated and confirmed. A copy of the trial court's order was published once a week for three consecutive weeks in the Montgomery Advertiser, a daily newspaper published in Montgomery County. A copy of the complaint and order was served on the district attorney of Montgomery County more than 18 days before the date set for the hearing on the complaint.
The district attorney answered the complaint, raising a number of legal defenses on behalf of taxpayers and citizens of Montgomery County. Numerous individual citizens, including citizens and taxpayers who reside outside Montgomery County, were permitted to intervene and to assert defenses. Of those entities that sought to intervene, only Elmore County and the Alabama State Employees Association were denied the right to intervene.[2] The trial court held a three-day hearing at which ore tenus evidence was presented; it then entered its final judgment.

II. Standard of Review
The trial court made 14 separate findings of fact, none of which is in dispute. This appeal concerns questions of law, including the interpretation of statutory provisions. Therefore, we review the issues presented by this appeal de novo, and the trial court's decision carries no presumption of correctness. Ex parte Baron Servs., Inc., [Ms. 1011635, April 4, 2003] ___ So.2d ___ (Ala.2003). Additionally, we note that an ordinance enacted by a local governing body "is presumed reasonable and valid, and that the burden is on the one challenging the ordinance to clearly show its invalidity." Jefferson County v. Richards, 805 So.2d 690, 706 (Ala.2001).[3]

*76 III. Analysis

A.
The taxpayers assert several arguments against the imposition of the occupational tax, including, among others, (1) that Ala. Code 1975, § 40-12-4(a), does not authorize the Commission to impose the occupational tax because the occupational tax is not a franchise, excise, or privilege-license tax and, as it applies to most taxpayers, is not levied with respect to "privileges or receipts from privileges"; (2) that § 40-12-4(b) prohibits the imposition of the occupational tax both because it is a tax "measured by gross proceeds" and because it is not "levied uniformly"; (3) that the occupational tax violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (4) that the occupational tax cannot be legally imposed on military personnel or lawyers. However, we need not address each of these arguments, because of our holding that the occupational tax violates § 40-12-4(b).
It is well established that "Alabama counties are creatures of statute, and thus `can exercise only that authority conferred on [them] by [the Legislature].'" Dillard v. Baldwin County Comm'n, 833 So.2d 11, 16 (Ala.2002) (quoting Jefferson County v. Johnson, 333 So.2d 143, 145 (Ala.1976)). This principle is true with regard to all county powers, including the power of taxation. Lightwave Techs., LLC v. Escambia County, 804 So.2d 176, 180 (Ala.2001). By enacting Ala.Code 1975, § 40-12-4(a), the Legislature authorized counties to impose certain taxes for school purposes[4]:
"(a) In order to provide funds for public school purposes, the governing body of each of the several counties in this state is hereby authorized by ordinance to levy and provide for the assessment and collection of franchise, excise and privilege license taxes with respect to privileges or receipts from privileges exercised in such county, which shall be in addition to any and all other county taxes heretofore or hereafter authorized by law in such county.... All the proceeds from any tax levied pursuant to this section less the cost of collection thereof shall be used exclusively for public school purposes, including specifically and without limitation capital improvements and the payment of debt service on obligations issued therefor."
(Emphasis added.)
However, the Legislature's grant in § 40-12-4(a) of taxing authority is expressly limited by § 40-12-4(b):
"(b) Notwithstanding anything to the contrary herein, said governing body shall not levy any tax hereunder measured by gross receipts, except a sales or use tax which parallels, except for the rate of tax, that imposed by the state under this title.... No such governing body shall levy any tax upon the privilege of engaging in any business or profession unless such tax is levied uniformly and at the same rate against every person engaged in the pursuit of any business or profession within the county; except, that any tax levied hereunder upon the privilege of engaging in any business or profession may be measured by the number of employees of such business or the number of persons engaged in the pursuit of such profession."[5]
*77 B.
By beginning with the phrase, "[n]otwithstanding anything to the contrary herein," § 40-12-4(b) expressly trumps any contrary language in § 40-12-4(a) because we interpret "herein" as referring to anything else in § 40-12-4. Hence, anything in § 40-12-4(b) that is inconsistent with the levy of an occupational tax supersedes any reference in § 40-12-4(a) that could be read as encompassing such a tax. Black's Law Dictionary, 585 (7th ed.1999), defines an excise tax:
"A tax imposed on the manufacture, sale, or use of goods (such as cigarette tax), or on an occupation or activity.... Also termed excise tax...."
Black's Law Dictionary, 1471, defines "occupation tax" as follows:
"An excise tax imposed for the privilege of carrying on a business, trade, or profession.... Also termed occupational tax."
(Some emphasis in definitions added; some emphasis original.) The introductory language of § 40-12-4(b) must be read to eliminate this construction of an "occupation tax" as an "excise tax" if the balance of § 40-12-4(b) is inconsistent with the levy of an occupational tax.
Section 40-12-4(b) prohibits occupational taxes in two ways. First, § 40-12-4(b) begins with a prohibition of a tax measured by gross receipts except under circumstances not here relevant. When this statute was enacted, gross-receipts taxes were commonly understood to embrace an occupational tax. Estes v. Gadsden, 266 Ala. 166, 171-72, 94 So.2d 744, 748-49 (1957); McPheeter v. City of Auburn, 288 Ala. 286, 292, 259 So.2d 833, 837 (1972). Such circumstance aids us in determining the meaning of the reference to gross receipts in § 40-12-4(b). See Abbott Labs. v. Durrett, 746 So.2d 316, 339 (1999):
"In an effort to avoid indulging in conjecture or searching for imaginary purposes with respect to these ... statutes, we have followed the well-settled rule of statutory construction `that it is permissible in ascertaining [the purpose and intent of a statute] to look to the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.' In re Upshaw, 247 Ala. [221] at 223, 23 So.2d [861] at 863 [ (1945) ]."
In addition, a tax on an employer could be measured by gross receipts. Section 40-12-4(b) thus condemns taxes on gross receipts imposed on either the employee or the employer. Although the ordinance provides a deduction for the first $5,000 of income, counsel for the Board conceded at oral argument that that deduction could be reduced to $1 in the future and his argument in favor of the occupational tax would remain unchanged. It would exalt form over substance to deem the presence of a deduction sufficient to overturn the obvious legislative hostility to measuring tax liability by gross receipts. See McPheeter v. City of Auburn, 288 Ala. at 289, 259 So.2d at 837.
Second, § 40-12-4(b) addresses the type of tax related to business income that is deemed appropriate in the context of a tax "upon the privilege of engaging in any business or profession" so long as that tax is "levied uniformly," with one exception the tax may be measured by the number of employees of the business or the number of persons engaged in the pursuit of the profession. In plain English, § 40-12-4(b) says: "Don't tax anyone by gross receipts, and if you must tax a business or a profession, do so uniformly, but you can compute *78 the tax on businesses or professions on a per capita basis." No reference is made in § 40-12-4(b) to trades or occupations. Employees are not engaged in the pursuit of a business or a profession in the context used in § 40-12-4(b); the context plainly speaks to taxing only employers. An ordinance taxing only those employers who are individuals and all employees impermissibly attempts to circumvent the prohibitions in § 40-12-4(b) against imposing taxes on employees by lumping all employees together.[6]

C.
Even if § 40-12-4(b) did not prohibit counties from levying occupational taxes, it is clear that the occupational tax levied by the Commission is not "levied uniformly" because it does not tax certain "person[s] engaged in the pursuit of ... business ... within the county." Ala.Code 1975, § 40-12-4(b).
The term "person," as that term is used in Title 40 of the Alabama Code, is defined in Ala.Code 1975, § 40-1-1; that section provides:
"For purposes of this title, and subject to additional definitions which are applicable to specific chapters or parts thereof, and unless the context otherwise requires, the following terms shall have the respective meanings ascribed by this section:
"....
"(8) Person. Any individual, association, estate, trust, partnership, corporation, or other entity of any kind."
(Emphasis added.) The Legislature's use of the word "shall" makes it clear that under § 40-1-1 this Court is required to apply the definition of "person" found in § 40-1-1 to § 40-12-4(b) unless that meaning is superseded by other definitions specific to § 40-12-4(b) (there are none) or "unless the context otherwise requires." See Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) ("The word `shall' is clear and unambiguous and is imperative and mandatory."). In other words, there is no discretionary "middle ground"; we are required to apply the meanings in the definitions enumerated in § 40-1-1 unless required to apply a meaning that is otherwise made clear by context.
We cannot identify any context within § 40-12-4(b) that would permit (much less require) us to apply a different meaning to the term "person" than the one explicitly provided in § 40-1-1(8). The Board argues that the term "person" in § 40-12-4(b) should be read as excluding such entities as corporations because, it argues, in enacting other sections of Title 40 the Legislature appeared to recognize a distinction between the terms "person" and "corporation." See Ala.Code 1975, § 40-12-2(a) ("Before any person, firm, or corporation shall engage in or carry on any business or do any act for which a license by law is *79 required...."); Ala.Code 1975, § 40-12-9(a) ("It shall be unlawful for any person, firm, or corporation to engage in or carry on any business...."); Ala.Code 1975, § 40-12-13 ("Where any person, firm, or corporation is engaged in more than one business...."); Ala.Code 1975, § 40-12-15(a) ("[Personal privilege to transact business] shall not be exercised except by the person, firm, or corporation licensed...."); Ala.Code 1975, § 40-12-18 ("Any person who acts as an agent for any person, firm, or corporation ....").
We find this argument unpersuasive for at least two reasons. First, the statutes cited by the Board were enacted separately from § 40-12-4(b), a fact which makes less viable any inference that the various sections of Title 40 can be read in pari materia to imply a legislative intent to redefine "person" as that term is used in § 40-12-4(b). Second, and most importantly, the Board's argument itself makes clear that the Legislature knew how to separate the terms and, for whatever reason, chose not to do so in § 40-12-4(b). In this respect, its argument actually cuts against the Board. In any event, the Board's argument certainly does not provide a context that would require a construction of the term "person" as used in § 40-12-4(b) other than the one provided by § 40-1-1(8).
Even if the occupational tax was a type of tax that the Commission could levy under § 40-12-4(a), to be valid the occupational tax would have to be "levied uniformly and at the same rate against every [`individual, association, estate, trust, partnership, corporation, or other entity of any kind'] engaged in the pursuit of any business or profession within the county." Ala.Code 1975, § 40-12-4(b); § 40-1-1(8).
As stated earlier, the ordinance describes the occupational tax as "A Privilege License Tax Upon The Privilege of Engaging in Trades, Occupations and Professions in Montgomery County." Section 1(r) of the ordinance defines the occupational tax as follows: "`Tax' shall mean the privilege license tax ... levied and assessed hereunder." Section 2 of the ordinance imposes the tax upon "any Employee and any Owner who engages in or follows any Trade, Occupation or Profession," including "both residents and non-residents of the County."[7] (Emphasis added.)
The ordinance defines an "Employee" as:
"[A]ny individual who receives Employee Compensation.... [A]ny individual who holds any kind of office or position, either by election or appointment, as a federal, state, county, or city official, if such individual does any kind of work or renders any kind of services in the County."
(Emphasis added.) It defines "Employee Compensation" as:
"[A]ll cash or non-cash benefits which an Employee receives from or is entitled to receive from or be given credit for by an Employer for work done or services rendered in any Trade, Occupation or Profession in the County. Cash or non-cash benefits shall include all salaries, wages, commissions, bonuses, severance pay or other compensation of any kind or any *80 other consideration having monetary value...."
The ordinance defines an "Owner" as:
"[A]ny individual who receives Owner Compensation. Owner shall include sole proprietors and other self-employed individuals... to the extent such individual receives Owner Compensation."
(Emphasis added.) It defines "Owner Compensation" as:
"[A]ll net earned income which an Owner receives from or is entitled to receive or be given credit for, in his capacity as Owner and not as an Employee, any work done or services rendered in any Trade, Occupation or Profession in the County...."
"Employees" and "Owners" are by definition "individuals" who receive employee compensation or owner compensation, and the occupational tax is imposed only upon that compensation. However, the occupational tax is not imposed upon the compensation of a corporation, an association, a partnership, etc. This fact is clear from the wording of the ordinance, and the Board has admitted as much.
Because the ordinance does not levy the occupational tax uniformly upon the privilege of every "individual, association, estate, trust, partnership, corporation, or other entity of any kind" that receives compensation for engaging in any business or profession, the Commission cannot levy the occupational tax under § 40-12-4. See Ala.Code 1975, § 40-1-1(8).
The trial court, in its judgment, ordered as follows:
"(h) The [occupational] `Tax' can be and is levied uniformly and at the same rate against every person engaged in the pursuit of any business or profession within the County...."
In doing so, the trial court erred to reversal, unless, as the Board contends, Ala. Code 1975, § 40-12-31, which the Legislature enacted in 2001,[8] trumped the limitations upon the abilities of counties to impose franchise, excise, or privilege-license taxes. The trial court did not address § 40-12-31; however, this Court can affirm the judgment of a trial court for any reason, even for a reason not expressed by the trial court in its order. Southern Energy Homes, Inc. v. Gregor, 777 So.2d 79, 81 (Ala.2000)("this Court can affirm the ruling of a trial court for any valid reason, even one not presented to or considered by the trial court").
Section 40-12-31 provides:
"No provision or provisions in this chapter shall prevent the Alabama Legislature from enacting, imposing, and establishing occupational taxes, which are to be paid to the county or otherwise, and are imposed on an individual's engaging in any occupation, business, or profession without any regard to whether he or she has a license to, or pays a license tax or fee in order to, carry on that occupation, business, or profession."
In Ex parte Prudential Insurance Co. of America, 721 So.2d at 1138, this Court quoted Tuscaloosa County Commission v. Deputy Sheriffs' Association of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991), for the following proposition:
"`Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed *81 intent of the Legislature must be given effect.'"
In essence, the Board argues that § 40-12-31 implicitly repeals the limitations found in § 40-12-4(b); we disagree. See Cook v. Lloyd Noland Found., Inc., 825 So.2d 83, 88 (Ala.2001) ("`The implied repeal of a statute by another statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the Legislature intended to repeal the first statute.'" (quoting Anniston Urologic Assocs., P.C. v. Kline, 689 So.2d 54, 59 (Ala.1997))). Section 40-12-31 speaks to the power of the Alabama Legislature, not the power of counties. The plain, ordinary, and commonly understood meaning of the words of § 40-12-31 does not empower a county to enact an occupational tax, nor does it in any way remove the requirement of uniformity in § 40-12-4(b).

IV. Conclusion
We hold that the taxpayers have met their burden to "clearly show [the] invalidity" of the ordinance. Richards, 805 So.2d at 706. Therefore, we reverse the judgment of the trial court to the extent that it holds that the levy and collection of the occupational tax the ordinance purports to impose is legal and valid and complies with the laws of the State of Alabama.
1020755REVERSED AND REMANDED.
1020758APPEAL DISMISSED AS MOOT.
1020763REVERSED AND REMANDED.
1020764REVERSED AND REMANDED.
1020768REVERSED AND REMANDED.
1020773REVERSED AND REMANDED.
LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE and JOHNSTONE, JJ., concur specially.
HOUSTON, J., concurs in part and concurs in the result.
MOORE, C.J., concurs in the result. (writing issued on July 16, 2003).
JOHNSTONE, Justice (concurring specially).
I concur in the scholarly main opinion. I add my own observations about two other grave defects in the Montgomery County tax ordinance now before us.
First, the ordinance exceeds the authority granted the county by § 40-12-4(a), Ala.Code 1975, to levy "taxes with respect to privileges or receipts from privileges." The ordinance purports to impose the tax "upon any Employee ... who engages in any Trade, Occupation or Profession," even though most nonprofessional employees in the county are not exercising any privilege as recognized by law and are not earning receipts from a privilege as recognized by law. To the extent that the ordinance purports to tax these employees, it is illegal. This illegality invalidates the entire ordinance notwithstanding the severability clause of the ordinance inasmuch as the goal of taxing these nonprofessional employees is central to the whole ordinance.
"[T]he whole statute will be stricken if the valid and invalid parts are so connected and interdependent in subject-matter, meaning, and purpose that it cannot be presumed that the Legislature would have passed the one without the other, or where the striking of the invalid would cause results not contemplated *82 or intended by the lawmakers, or where that invalid is the consideration or inducement of the whole act, or where the valid parts are ineffective and unenforceable in themselves, according to the legislative intent."
State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 241, 59 So. 294, 302 (1912). Accord State v. Roden, 15 Ala.App. 385, 73 So. 657 (1916). See State v. Martin, 735 So.2d 1156 (Ala.1999).
Second, the ordinance purports to exercise police and legislative powers the Montgomery County Commission has not been granted either by the Alabama Constitution of 1901, by any statute, or by any common law principle. See Dillard v. Baldwin County, 833 So.2d 11, 16 (Ala. 2002); Jefferson County v. Johnson, 333 So.2d 143, 145 (Ala.1976); Laney v. Jefferson County, 249 Ala. 612, 614, 32 So.2d 542, 543 (1947); Arledge v. Chilton County, 237 Ala. 96, 99, 185 So. 419, 421 (1938); see also Ex parte Pine Brook Lakes, Inc., 617 So.2d 1014 (Ala.1992), and Bailey v. Shelby County, 507 So.2d 438 (Ala.1987). For example, section 11 of the ordinance purports to create crimes, even felonies, and section 7 purports to grant subpoena power to the county revenue commissioner. Such an exercise would inflict the same harm on the citizens of this state that Article IV, § 104(14), Alabama Constitution of 1901, prohibits the state legislature itself from inflicting.
SEE, J., concurs.
HOUSTON, Justice (concurring in part and concurring in the result).
I do not concur with Part III.B of the Court's opinion, because I am not confident that § 40-12-4(b) prohibits the imposition of any occupational tax under § 40-12-4(a). I concur completely with the remainder of the opinion, which I authored. In my opinion, the uniformity requirement of § 40-12-4(b) destroys the validity of the ordinance before us.
MOORE, Chief Justice (concurring in the result).
I concur with the majority that the occupational tax is invalid under Alabama law. However, I write specially to demonstrate that the majority has reached the right decision on an improper basis.
On August 19, 2002, in an attempt to raise tax revenues, the Montgomery County Commission passed a resolution imposing a 1.5% tax on the "compensation" of "any Employee and any Owner who engages in or follows any Trade, Occupation or Profession" in Montgomery County, regardless of the residence of the employee or owner. "Employee Compensation" includes "all salaries, wages, commissions, bonuses, severance pay or other compensation of any kind, or any other consideration having monetary value." "Owner Compensation" includes "all net earned income" an "Owner" is entitled to receive, including, but not limited to, "net earnings from self-employment on Internal Revenue Service Form 1040 Schedule SE." The Montgomery County Board of Education ("the Board") asserts that this occupational tax is a privilege license tax authorized by § 40-12-4, Ala.Code 1975, to be issued to provide funds for public schools.
The majority holds that § 40-12-31, Ala. Code 1975, enacted by the Legislature in 2001, does not implicitly repeal the limitations of § 40-12-4(b), Ala.Code 1975, as the Board claims, and that the occupational tax is invalid because it was not "levied uniformly" upon individuals and corporations as required by § 40-12-4(b). Nevertheless, I am compelled to conclude that neither § 40-12-4 nor § 40-12-31 permit an occupational tax on "gross receipts" of an individual's earnings or of a business, *83 because such a tax is a tax on "income" and is prohibited by the limitations of Amendments No. 25 and No. 662 to the Alabama Constitution of 1901.
In Eliasberg Brothers Mercantile Co. v. Grimes, 204 Ala. 492, 495, 86 So. 56, 58 (Ala.1920), this Court stated:
"`Having been taught by experience that no legislative power is more liable to oppressive use than the taxing power, and having suffered evils by resting it too broadly on discretion, the people have shown, in the history of successive constitutions, a progressive policy to restrain the power of the legislative department in this respect, and to remedy existing, and guard against apprehended, evils, by imposing limitations consistent with the public needs and the public safety.'"
(Quoting Western Union Tel. Co. v. State Bd. of Assessment, 80 Ala. 273, 275 (1885)) (emphasis added). The Court in Eliasberg Bros. recognized these limitations: "A constitution, properly conceived, deals with basic principles and policies, and omits specific applications. Our constitutions limit the rate of taxation of property." 204 Ala. at 498, 86 So. at 61 (emphasis added). In 1933, another limitation on the taxation of income was added when Amendment No. 25 to the Alabama Constitution was ratified.

I. Ratification of Amendment No. 25
Originally, an occupational tax was imposed in one of three ways: (1) as a sales tax on the gross amount of sales, Lott v. Ross & Co., 38 Ala. 156 (1861); (2) as a flat-rate tax on an occupation, Phoenix Assurance Co. of London v. Fire Dep't of Montgomery, 117 Ala. 631, 23 So. 843 (1898); or (3) as a tax on the gross receipts of a business, Western Union Tel. Co. v. State Bd. of Assessment, supra, rev'd on other grounds sub nom. Western Union Tel. Co. v. Seay, 132 U.S. 472, 10 S.Ct. 161, 33 L.Ed. 409 (1886).
In 1919, the Alabama Legislature passed the Revenue Act of 1919, Act No. 328, Ala. Acts 1919, 374-95, which imposed a graduated tax of two to four percent on income. In Eliasberg Bros., supra, this Court struck down the Revenue Act and held that the tax on "income" was a tax on property in excess of the maximum tax rate allowed on property by § 214, Ala. Const.1901. Eliasberg Bros., 204 Ala. at 499, 86 So. at 62. Eliasberg Bros., relying on precedent, stated that the income tax was not an excise[9] tax on an occupation or business; instead it was a property tax. 204 Ala. at 495, 86 So. at 59, citing Lott, 38 Ala. at 160. Thus, the Legislature could impose such a tax only in the event of the adoption of an amendment to the Alabama Constitution granting it the power to tax "income" in a way not restricted by the constitutional limitations on property taxes.
Thirteen years later, on August 2, 1933, the people of the State of Alabama ratified Amendment No. 25, which enabled the Legislature to tax the net incomes of individuals and corporations, but set specific limitations on the Legislature's authority to impose such taxes. Amendment No. 25 states, in pertinent part:
"The legislature shall have the power to levy and collect taxes for state purposes on net incomes from whatever source derived within this state, including the incomes derived from salaries, fees and compensation paid from the state, county, municipality, and any agency or creature *84 thereof, ... and to designate and define the incomes to be taxed and to fix the rates of taxes, provided that the rate shall not exceed 5 percent nor 3 percent on corporations. Income shall not be deemed property for purposes of ad valorem[[10]] taxes...."
(Emphasis added.)
In anticipation of the ratification of Amendment No. 25, the Legislature passed an enabling act, levying a tax on the incomes of individuals and corporations at the rates specified in Amendment No 25. State v. Weil, 232 Ala. 578, 584, 168 So. 679, 684 (1936). The tax on an individual's income was based on the individual's "gross income" less certain deductions. 232 Ala. at 584, 168 So. at 885. The Legislature broadly defined "gross income" as:
"`gains, profits and income derived from salaries, wages or compensation for personal services ... including the salaries, incomes, fees or other compensation ...; also from interest, royalties, rents, dividends, securities or transactions of any business carried on for gain or profit and the income derived from any source whatever.'"[11]
232 Ala. at 584, 168 So. at 685 (quoting Act No. 169, Ala. Acts 1933, Ex.Sess.).
In Weil, this Court held that the purpose of Amendment No. 25 was "to remove net incomes, as a subject of taxation, from the influence of the decision of this court in [Eliasberg Bros.]" State v. Weil, 232 Ala. at 583, 168 So. at 684. In effect, Amendment No. 25 removed income from the class of property for purposes of taxation and placed it in the class of those privileges subject to excise taxation. 232 Ala. at 583, 168 So. at 684.
Since the ratification of Amendment No. 25, the Alabama Constitution has been amended twice to raise the limit on corporate income tax above the three percent limit set in Amendment No. 25. First, in Amendment No. 212, ratified in 1963, the Legislature was granted the power to levy an income tax on corporations "at a rate not exceeding five percent." More recently, Amendment No. 662, which was ratified in 2000, raised the limit on corporate income tax to a rate of "six and one-half percent on taxable income of corporations for the calendar year 2001, or for any fiscal year beginning in the calendar year 2001, and each year thereafter."
Today, the Alabama Constitution has at least two specific limitations on taxation: a limit on property taxes contained in Article XI, § 214, Ala. Const.1901, and a limit on income taxation contained in Amendment No. 25 (amended with respect to the taxation of corporate income by Amendment No. 662). These limitations have been a source of frustration for legislators and organizations such as the Alabama Citizens' Commission on Constitutional Reform ("ACCCR"), who have called for tax increases. Even as late as January 16, 2003, a report published by ACCCR noted that the Constitution of Alabama 1901 imposes limitations on taxation, which ACCCR describes as "regressive":
"Meanwhile, inclusion in the Constitution of limitations and restrictions upon the type and level of taxes that can be imposed has perpetrated an unduly regressive tax structure. The present *85 Constitution only fosters this regressive tax structure as it caps revenue sources, such as income and property tax, and makes it inefficient and difficult to reform the tax structure in a more efficient manner."
Report of the Alabama Citizens' Commission on Constitutional Reform, January 16, 2003, at 7. But this frustration with the taxation limitations imposed by our Constitution cannot serve as an excuse to ignore the plain import of Amendment No. 25, with respect to individual income tax, and Amendment No. 662, with respect to corporate income tax.

II. Amendment No. 25 and Individual Income Taxes
In 1957, the Gadsden Board of Commissioners levied a one percent occupational tax on the "gross receipts" of individuals "for the privilege of engaging in or following any trade, occupation or profession within the corporate limits of the city." Estes v. City of Gadsden, 266 Ala. 166, 169, 94 So.2d 744, 746 (1957). Adopted pursuant to the authority granted the Board of Commissioners by the Legislature to fix and collect licenses on occupations to raise revenue, the ordinance defined "`gross receipts' " to include "`all salaries, wages, commissions, bonuses, or other money payment of any kind, or any other consideration having monetary value.'" Estes, 266 Ala. at 169, 94 So.2d at 746.
The plaintiffs in Estes asserted that the occupational tax imposed by the Board of Commissioners was, in reality, an income tax, and not a license or privilege tax. 266 Ala. at 171, 94 So.2d at 748. After superficially examining Eliasberg Bros. and citing, but not analyzing, several cases[12] that had dealt with occupation or privilege taxes, the Court erroneously determined that an income tax was distinct from an excise tax on an occupation or business. 266 Ala. at 171, 94 So.2d at 748-49. The Court held that Gadsden's occupational tax, which was measured on the "gross receipts" of individuals, was not an income tax; rather, "gross receipts" were "merely a manner of measuring the tax." 266 Ala. at 172, 94 So.2d at 749-50.
In reaching its conclusion, the Estes Court improperly concluded that the distinction made in Eliasberg Bros.between an income tax and an occupational or privilege taxwas still valid. The Court stated:
"In the case of Eliasberg v. Brothers Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 59, 11 A.L.R. 300, this court held that income was property within the meaning of § 214 of the constitution and held invalid a graduated tax of two to four percent on incomes imposed by the Revenue Act of 1919. Under the income tax amendment to the constitution in 1933, Amend. No. 25, an income tax was enacted by the state but this court in the Eliasberg case made the distinction between income and property taxes on one hand and occupational or privilege taxes on the other." 266 Ala. at 171, 94 So.2d at 748-49 (emphasis added).
Yet the 1920 Eliasberg Bros. "distinction" had been eliminated 23 years before Estes was decidedwhen Amendment No. 25 was passed in 1933. In Weil, decided 16 years after Eliasberg Bros. and 3 years after Amendment No. 25 was ratified, this Court observed:

*86 "Viewing [Amendment No. 25] from the standpoint of common sense, ... in the light of legislative history in respect to income tax, and the interpretation and application of the Constitution thereto, it is reasonably clear that its dominating purpose is to remove net incomes, as a subject of taxation, from the influence of the decision of this court in [Eliasberg Bros.] ..., by taking this subject of taxation, by constitutional mandate, out of the property class, placing it in the class of privileges that are subject to excise taxation."

232 Ala. at 583, 168 So. at 684 (emphasis added).
For the Estes Court to hold in 1957 that there was still a distinction between an income tax on the one hand and an occupational tax or "privileges ... subject to excise taxation" on the other was error. The Estes Court, relying on the 1920 Eliasberg Bros. opinion, blatantly ignored the import and effect of Amendment No. 25 to the Alabama Constitution, ratified in 1933, and the 1936 holding in Weil that removed "income," from the class subject to property taxation and placed it in a class subject to excise taxation. The Estes Court then redefined "occupational taxes" to include a tax on an individual's gross earnings, in substance the same definition provided by the Legislature for "income" in the enabling tax act passed in conjunction with Amendment No. 25. In other words, because of the Legislature's broad definition of "income," the income tax and the occupational tax in Estes were both levied on the same revenue, i.e., gross receipts of an individual's earnings. Therefore, the Estes Court amended the Alabama Constitution by judicial fiat and allowed a tax on income by way of the occupational tax, which exceeded the limitations of Amendment No. 25.
As the majority opinion in this case points out, Black's Law Dictionary defines an "occupation tax" as follows: "An excise tax imposed for the privilege of carrying on a business, trade, or profession. For example, many states require lawyers to pay an occupation tax." Black's Law Dictionary 1471 (7th ed.1999). An "excise tax" is defined as follows: "A tax imposed on the manufacture, sale, or use of goods (such as cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." Black's Law Dictionary 585. These definitions demonstrate that the category of "excise" taxation is broader than the category of "occupation" taxation and that occupational taxes are within the excise-tax category. Thus, when Amendment No. 25 placed "income" in the class of privileges that are subject to excise taxation, it placed income taxes in the same category of taxation as occupational taxes. The Legislature's broad definition of income in the enabling tax act enacted pursuant to Amendment No. 25 completed the merger of occupational taxes on gross receipts with income taxes. The Estes Court's reversion to the defunct distinction between income taxes and excise taxes in essence sanctioned an unconstitutional double tax on income by authorizing occupational taxes on gross receipts.

III. Amendment No. 25 and Corporate Income Taxes
In the 1937 decision of Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25 (Ala.1937), this Court committed the same error it had committed in Estes neglecting the effect of Amendment No. 25 concerning "occupational" taxesthis time on businesses. Nachman erroneously held, after Amendment No. 25 had been ratified, that a tax levied on the gross receipts of a business was not an income tax or a property tax. 233 Ala. at 635, 173 So. at 31. To support the proposition, the *87 Court relied primarily on the 1861 case of Lott v. Ross, supra; Lott stated:
"A tax upon the `gross amount of sales of merchandise,' under section 391 of the Code, is not a tax upon the goods themselves, or the fruits of the sale, but upon the business or act of selling. This is not, then, a property or income tax, but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed."
38 Ala. at 159. Eliasberg Bros. had relied on this same distinction between occupational or privilege taxes and income taxes in striking down a tax levied on the gross receipts of individuals.[13] But, as previously observed, the ratification of Amendment No. 25 had already eliminated this distinction.
Nachman ignored the effect of Amendment No. 25, stating:
"This court more than seventy years ago committed itself to the proposition that a tax upon `the gross amount of sales of merchandise' was not a tax upon the goods themselves, or fruits of sale, but upon the business or act of selling; that it was not a property or income tax, but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed. Lott v. Ross & Co., 38 Ala. 156. This holding has been reaffirmed by this court in numerous decisions since it was first announced in the above-cited case."
233 Ala. at 635, 173 So. at 31 (emphasis omitted; emphasis added). This conclusion disregards the sweeping definition of "income," including corporate income, fashioned by the Legislature in the General Revenue Act of 1935, pursuant to Amendment No. 25.
Title 51, § 401, Ala.Code 1940,[14] titled "Gross income defined (corporations)," defined gross income for corporations by referencing the definition of gross income for individuals in Title 51, § 384, Ala.Code 1940, which stated:
"Gross income defined (individual).  The term `gross income' as used herein: (1) Includes gains, profits and income derived from salaries, wages or compensation for personal services of whatever kind, or in whatever form paid, including the salaries, income, fees, and other compensation of state, county and municipal officers and employees, or from professions, vocations, trades, business, commerce or sales, or dealings in property whether real or personal, growing out of ownership, or use of or interest in such property; also from interest, royalties, rents, dividends, securities or transactions of any business carried on for gain or profit and the income derived from any source whatever...."[15]
(Emphasis added.)
Taxes on income from "commerce or sales ... or transactions of any business carried on for gain or profit" are taxes on the gross receipts of a business. Hence, this definition of corporate income clearly encompassed a tax on the gross receipts of a business, and the rate at which such a tax can be levied was therefore restricted by Amendment No. 25 (as amended by Amendment No. 662). Whether labeled an "occupational" tax or any other name, such *88 a tax is, by definition, an income tax. Thus, Nachman and its progeny, see, e.g., Tillman v. City of Homewood, 374 So.2d 271, 272-73 (Ala.1979), erroneously concluded that a tax levied on the gross receipts of a business is not an income tax.

IV. The Montgomery County Occupational Tax
The majority opinion in this case found that the occupational tax was invalid because it was not levied uniformly under § 40-12-4(b), i.e., corporations were not taxed as were individuals:
"`Employees' and `Owners' are by definition `individuals' who receive employee compensation or owner compensation, and the occupational tax is imposed only upon that compensation. However, the occupational tax is not imposed upon the compensation of a corporation, an association, a partnership, etc....
"Because the ordinance does not levy the occupational tax uniformly upon the privilege of every `individual, association, estate, trust, partnership, corporation, or other entity of any kind' that receives compensation for engaging in any business or profession, the [Montgomery County] Commission cannot levy the occupational tax under § 4-12-4."
863 So.2d 73, 80 (Ala.2003).
In essence, the majority held that the tax base for the proposed occupational tax was too small because it did not impose the tax on corporations. The real problem is that any tax was levied either on individual or corporate income exceeding the tax-rate limitations of Amendments No. 25 and No. 662. Neither individuals nor corporations can be taxed on "income," as that term is defined by the Legislature under Amendments No. 25 and No. 662, above the rate of five percent for individuals and six and one-half percent for corporations. Amendments No. 25 and No. 662 prohibit any such tax!
Today, all occupational tax ordinances relying on Estes or Nachman that levy a tax on the gross receipts of individual earnings or on gross receipts of a business are "income taxes" under Amendments No. 25 and No. 662 and subsequent income tax legislation, and thus are restricted by the Constitution of Alabama, because the State of Alabama already taxes such income at the maximum rate permitted. See §§ 40-18-2, 40-18-13 to -14.3, Ala.Code 1975 (individual income tax);[16] § 40-18-31, Ala.Code 1975 (corporate income tax).[17] Therefore, it is error for this Court to rely on Estes or Nachman or their progeny for the proposition that occupational taxes levied on the gross receipts of an individual's earnings or on the gross receipts of a business are not income taxes. See, e.g., Parker v. Jefferson County, 796 So.2d 1071, 1074 (Ala.2000); Jolly v. City of Birmingham, 55 Ala.App. 603, 607, 318 So.2d 300, 303 (1975); McPheeter v. City of Auburn, 288 Ala. 286, 292, 259 So.2d 833, 837 (1972).
As the majority reminds us, "`Alabama counties are creatures of statute, and thus "can exercise only that authority conferred *89 on [them] by [the Legislature]."'" 863 So.2d at 76 (quoting Dillard v. Baldwin County Comm'n, 833 So.2d 11, 16 (Ala. 2002), quoting in turn Jefferson County v. Johnson, 333 So.2d 143, 145 (Ala.1976)). Because occupational taxes measured on the gross receipts of businesses and/or individuals' earnings are income taxes, the rate restrictions set out in Amendments No. 25 and No. 662 apply to those occupational taxes. Income taxes are limited by Amendment No. 25 to a rate of five percent on individuals, and by Amendment No. 662 to six and one-half percent on corporations. Consequently, the Legislature lacks the authority to delegate the power to tax individual income at a rate that in the aggregate exceeds five percent and corporate income at a rate that in the aggregate exceeds six and one-half percent; any such purported delegation is therefore void. The Legislature may not give counties what the people of Alabama have reserved to themselves, i.e., the power to tax income at levels above the rates established in the Alabama Constitution.
The ordinance in this case imposes a 1.5 percent tax on the "compensation" of "any Employee and any Owner who engages in or follows any Trade, Occupation or Profession" in Montgomery County. All "compensation" subject to taxation under the occupational tax is already taxed by the Legislature at the "maximum rate" permitted for income tax. Because the occupational tax in this case is levied on the gross receipts of the earnings of individuals, which are already subject to the state's income tax at the maximum rate pursuant to Amendment No. 25, the occupational tax in this case is prohibited and unconstitutional.

V. Conclusion
This Court must be vigilant in preserving the constitutional boundaries of the state's power as drawn by the people of Alabama in its constitution. Even the report of the Alabama Citizens' Commission on Constitutional Reform submitted on January 16, 2003, supra, clearly recognizes that limitations and restrictions on the type and level of taxation can be changed only by a new constitution or by appropriate amendments to the present one.
"Any new or revised Constitution should delegate the taxing power to the appropriate legislative body and should not contain any details or limitations addressing the substantive tax provisions. With respect to tax provisions that affect all Alabamians, the Legislature should have the legal authority to enact substantive tax laws. With respect to local tax rates and levies, the local governing bodies should have power to enact tax measures.... [T]he rate and exemptions specified in Amendment 25 (Maximum Tax Rate) and Amendment 225 (Deductions for Federal Income Tax Paid) should be removed from the State Constitution' ... [and] ceilings for ad valorem taxes should be removed from the Constitution."
ACCCR Report, at 8-9 (emphasis added). While, the ACCCR recommends removing all limitations on the taxing power, the ACCCR, nevertheless, recognizes that the wisdom of, and the power to make, such a decision rests firmly in the hands of the people of Alabama. Should the people wish to give counties and municipalities the power to levy additional taxes on income based on an individual's earnings or on the "gross receipts" of a business, they have the power and authority to do so. The limitation on "income" taxes under Amendments No. 25 and No. 662 and even the restrictions on "property" taxes under § 214 can be removed from our Constitution by the people as surely as they were instituted by the people. But such power is not within the province of the judiciary.
*90 As our first President, George Washington, said in his Farewell Address to our Nation on September 17, 1796:
"If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the way, which the constitution designates. But let there be no change by usurpation; for, though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed."
George Washington, Farewell Address (September 17, 1796), XII The Writings of George Washington 226 (Jared Sparks, ed. 1838).
Our first President certainly understood the need to be bound by the Constitution. He not only warned of "irregular oppositions to its acknowledged authority," but also advised that we "resist with care the spirit of innovation upon its principles, however specious the pretexts." Farewell Address, 223. This Court is likewise bound by the Alabama Constitution, which can be changed only by the designated amendment process, not by judicial innovation or dilution.
This Court in Eliasberg Bros. recognized the acknowledged authority of the Alabama Constitution when it stated that "income" was "property" and that the limitations on property taxation in § 214 of the Constitution forbade such a tax. That Court "resist[ed] ... the spirit of innovation upon [the Constitution's] principles" when it declared: "The theory of judicial amendment is exceedingly attractive to our minds and in accordance with our natural inclinations, but it leads to quagmires of trouble into which we cannot safely enter." Eliasberg Bros., 204 Ala. at 500, 86 So. at 62.
Whatever pretext may be proffered for levying an occupational tax on income, no court may disregard constitutional restrictions in favor of those who would circumvent the Alabama Constitution. "We are... not at liberty to disregard or restrict the plain meaning of the provisions of the [Alabama] Constitution." McGee v. Brown, 341 So.2d 141, 143 (Ala.1976). Only the people of the State of Alabama, by amending the current constitution or adopting a new one, possess the authority to change the current tax system in this State.
This Court reached the proper result in this case by holding the occupational tax levied by the Montgomery County Board of Education invalid. However, this Court should have overruled Estes and based its decision on the Alabama Constitution and on Amendment No. 25. In the future, this Court should declare any occupational tax levied on income of individuals or businesses exceeding the levels authorized by Amendments No. 25 and No. 662 to be a violation of the Alabama Constitution of 1901.
NOTES
[1] Where used herein, the term "Board" shall include the Board of Education and its members.
[2] Elmore County appeals the denial of its motion to intervene; however, our decision precludes consideration of that issue.
[3] The taxpayers contend that because Ala. Code 1975, § 40-12-4, provides authority to tax, it must be interpreted most strictly against the taxing authority and in favor of all taxpayers. However, the rule regarding strict interpretation in favor of the taxpayer applies only when a "taxing statute" or ordinance is being interpreted. Section 40-12-4 is not a "taxing statute" in that it does not levy a tax; rather, § 40-12-4 merely authorizes counties to enact ordinances that levy taxes. See, e.g., City of Arab v. Cherokee Elec. Coop., 673 So.2d 751, 761 (Ala.1995) ("`Taxing statutes must be construed most strictly against the taxing authority and most favorably for the taxpayer.") (emphasis added); City of Birmingham v. Am-South Bank, N.A., 591 So.2d 473, 477 (Ala. 1991) ("A basic rule of statutory construction is that ambiguous tax statutes [and ordinances] are construed against the taxing authority and in favor of the taxpayer.") (emphasis added).
[4] It is undisputed that the funds generated by the occupational tax are to be used solely for public-school purposes.
[5] The language that is now found in § 40-12-4(b) was added during the 1969 Regular Session of the Legislature, approximately four months after the enactment of what is now § 40-12-4(a) at the First Extraordinary Session of 1969 of the Legislature.
[6] Act No. 89, enacted at the Fourth Special Session of 1975 of the Legislature and effective November 13, 1975, provided that counties within a certain population bracket, which included Montgomery County, are "expressly prohibited from levying or collecting any additional occupational or gross proceeds tax, of whatever nature." (Emphasis added.) The reference in § 2 of Act No. 89 to "additional occupational tax or gross proceeds tax" cannot be used as authority for recognizing an occupational tax under § 40-12-4(b) for two reasons. First, § 1 of Act No. 89 provides that the Act is subject to any limitation of any general law of this State. The limitation against an occupational tax in § 40-12-4(b), being a general law, cannot be overcome by Act No. 89. Second, the reference to "additional" is necessary to accommodate the prospect that the Act, applicable to counties within a specified population bracket, might have a field of operation in a county where an occupational tax might already or in the future exist by a local enabling act.
[7] Section 2 of the ordinance provides:

"It shall be unlawful for any individual to engage in or follow any Trade, Occupation, or Profession on or after the Tax Commencement Date, without paying the [occupational] Tax for the privilege of engaging in or following such Trade, Occupation, or Profession, which [occupational] Tax shall be measured by one and one-half percent (1½) of the Compensation of each such individual."
[8] See Act No. 2001-383, Ala. Acts 2001.
[9] Black's Law Dictionary defines an excise tax as: "A tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)," Black's Law Dictionary 585 (7th ed. 1999).
[10] Black's Law Dictionary defines an ad valorem tax as "[a] tax imposed on the value of something (esp. real property)." Black's Law Dictionary 1469 (7th ed.1999). The amendment also provided certain income tax exemptions.
[11] Today, the Legislature continues to define income broadly. See § 40-18-2, 40-18-13 to -14.3, Ala.Code 1975.
[12] Mobile Battle House v. City of Mobile, 262 Ala. 270, 78 So.2d 642 (1955); Sanford Serv. Co. v. City of Andalusia, 256 Ala. 507, 55 So.2d 856 (1951); Nachman v. State Tax Comm'n, 233 Ala. 628, 173 So. 25 (1937); and Town of Guntersville v. Wright, 223 Ala. 349, 135 So. 634 (1931).
[13] Not coincidentally, Eliasberg Bros. cited Lott for the same distinction regarding individual taxation on income.
[14] The current version of this section appears at § 40-18-34, Ala.Code 1975, "Gross Income of Corporations Defined."
[15] The current version of this section appears at § 40-18-14, Ala.Code 1975; § 40-18-14 uses verbatim the language quoted from Title 51, § 384, Ala.Code 1940.
[16] The state levies an income tax at a rate of five percent on income in excess of $3,000 for those whose filing status is single, head of family, or married filing separate returns; it levies a five percent tax on income in excess of $6,000 for those whose filing status is married and filing jointly. § 40-18-5, Ala.Code 1975. Therefore, the Montgomery County occupational tax, which levies an additional 1.5 percent tax on "compensation," creates an aggregate tax rate on individual income that exceeds the constitutionally permitted rate of 5 percent.
[17] The maximum tax rate on corporate income is "six and one-half percent." § 40-18-31, Ala.Code 1975.